GLASCOCK v. THE CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

1. **Common Carrier**: ACTION AGAINST, FOR DELAY IN TRANSPORTATION OF CATTLE: MEASURE OF DAMAGES. In an action against a common carrier for damages occasioned by delay in the transportation and delivery of cattle, the measure of damages is the difference between the market price of the cattle when they arrived at their destination and the market price when they should have arrived, together with compensation for the difference between the shrinkage in weight actually sustained by the cattle and that which would have occurred if there had been no delay. (*Sturgeon v. R. R. Co.*, 65 Mo. 570.) Evidence is not admissible to show that between the time of their arrival and the time when they were sold, a decline in the market took place.

2. **Evidence**: PRACTICE: INSTRUCTIONS. Error committed in admitting evidence to the jury is not cured by the giving of instructions correctly declaring the law, unless the objectionable evidence is expressly withdrawn from their consideration.

*Appeal from Audrain Circuit Court.*—HON. G. PORTER, Judge.

*Macfarlane & Trimble* for appellant.

*Forrist & Duncan* for respondent.

NORTON, J.—The petition states substantially that on the 11th day of September, 1875, plaintiffs were the owners of seventy-nine head of cattle, which were then ready for market, and defendant was then a railroad company and common carrier from Laddonia, in Audrain county, Missouri, to Chicago, Illinois; that on said day plaintiffs delivered said cattle to defendant at Laddonia, and defendant promised, for compensation paid it, to convey them, without delay and in a reasonable time, to Chicago; that under the directions of defendant, plaintiffs loaded said cattle on the cars provided by defendant; that defendant did not forward said cattle as agreed, but negligently permitted them to stand in the cars at said station for ten hours after they had been loaded and should have been on their way,

by reason of which they were greatly damaged and reduced in weight, and, by reason of which, also, there was a decline in the market at Chicago between the time said cattle should have arrived there and the time they did arrive, by reason of all which plaintiffs were damaged in the sum of $500, for which sum they prayed judgment. Defendant's answer denied the delay, the negligence, the damage to the cattle and the decline in the market. It also set up a special written contract between the plaintiffs and defendant for the shipment of these cattle, by which plaintiffs, in consideration of shipment at reduced rates, agreed to take the risk of injuries which said cattle should sustain from any delay, and all risk of damages which should be sustained by reason of delay in the transportation of said cattle to Chicago, and they would load and unload said cattle at their own risk, and they would assume all risk of damage to said cattle while in defendant's stockyards awaiting shipment. Defendant averred performance, on its part, of said contract, and that any injury that plaintiffs had sustained, was through the causes excepted in said contract, and through plaintiffs' own negligence. The verdict was for plaintiffs for $280.

The evidence tended to show that plaintiffs' cattle were loaded at Laddonia, a station on defendant's road, on Saturday, the 11th day of September, at 9:55 a. m., for shipment to Chicago, to be carried on a train of defendant due at said station about that time; that the train by which they were to be shipped did not arrive on time, in consequence of detention at Mexico waiting for stock that had been delayed on the St. Louis, Kansas City & Northern Railroad; that the train did not arrive till six o'clock in the evening, at which time the cattle were shipped without further delay, arriving in Chicago at 8 o'clock p. m. on Sunday, and that, but for the delay at Laddonia, they would have reached there at 12 o'clock m. on the same day. A special contract for shipment of the cattle was introduced, in which it was agreed that plaintiffs should not

be liable for injury occasioned by delay in the shipment of stock. The evidence also showed that cattle in Chicago, on the Monday following their arrival at that place, were worth $4\frac{1}{4}$ cents per pound; that the ordinary shrinkage of cattle shipped from Laddonia to Chicago was sixty pounds; that the shrinkage in plaintiffs' cattle was ninety pounds. Plaintiffs were permitted to show that the price of cattle had declined in Chicago from $4\frac{1}{4}$ cents on Monday to 3 7-10 cents on Tuesday, when plaintiffs sold their cattle at the latter price. This evidence was objected to by defendant, and the action of the court in receiving it is assigned for error.

The evidence, we think, was clearly inadmissible, for the reason that the true measure of damages was the dif-1. COMMON CAR-RIER: action against, for delay in transportation of cattle: measure of damages. ference between the market price of the cattle when they did arrive, and when they should have arrived at their destination, and the difference between the actual and usual shrinkage of the cattle. *Sturgeon v. R. R. Co.*, 65 Mo. 570. The question for the jury was not the difference between the price of cattle on Tuesday, when plaintiff sold them, and the price when they arrived, but the difference between the price when they arrived at the place of destination and when they ought to have arrived, had there been no delay. The evidence was calculated to mislead the jury, and doubtless did mislead them. There was not a particle of evidence showing any difference between the price when they arrived and when they ought to have arrived; hence the jury could not have allowed any damages to plaintiffs on that account. Under the evidence, all that they could allow damages for was the difference between the usual and actual shrinkage. This was shown to be thirty pounds per head, which, at $4\frac{1}{4}$ cents per pound, the price of cattle when they arrived, would be $1.25 each, or for the total number, seventy-nine head shipped, $98.75. The verdict was for $280, hence the conclusion is irresistible that the jury must have considered and been misled by the evidence thus received.

The error in receiving it was not cured by the subsequent direction given by the court in one of the defendant's instructions, that if they believed that the cattle market was as good in Chicago at the time the cattle arrived there as when they should have arrived, plaintiffs could not recover on account of any difference in the market; for the improper evidence thus admitted was. not withdrawn from their consideration. Had that been done in the instruction, the verdict could be maintained on the theory that the jury did not consider the evidence, ánd the error would be cured.    Judgment reversed and cause remanded.    All concur.

