BEN PERRY et al., Respondents, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellants.

89 49
93 610

Kansas City Court of Appeals, May 6, 1901.

Common Carriers: LIVE STOCK: DELAY IN DELIVERY: MEASURE OF DAMAGES. Where the carrier delays the delivery of live stock to the loss of the shipper, the measure of damages is the difference in the market price at the time the cattle should have been delivered and the time they were in fact delivered.

Appeal from Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED.

*W. F. Evans,* and *McDougal & Sebree* for appellant.

The measure of damages in such cases is the difference in the market price at the time they should have arrived and

Vol 89 app—4

the market price when they did arrive. Gann v. Railway, 72 Mo. App. 34; Wilson v. Railway, 66 Mo. App. 388; Glascock v. Railroad, 69 Mo. 589; Faulkner v. Railroad, 51 Mo. 311. The fact that defendant's instruction number 6 correctly declared the law did not cure the error in giving plaintiffs' instructions, because the instructions are in direct conflict.

*Perry & Lyons* and *Harber & Knight* for respondent.

(1) The facts stated in plaintiff's petition authorized a recovery for the items of damages enumerated; the evidence adduced in support thereof was competent, and fully sustained the allegations of the petition; and the measure of plaintiff's damages was properly defined in the instruction. Douglass v. Railroad, 53 Mo. App. 473; Glasscock v. Railroad, 86 Mo. App. 114. (2) The correct measure of damages in a case of this kind is "such as would cover the shrinkage in the cattle, if any, occasioned by the delay, and the difference, if any, between the price at which the cattle were sold by reason of the unreasonable delay, and the price at which they could have been sold had there been no such delay." Douglass v. Railroad, 53 Mo. App. loc. cit. 476; Leonard v. Railroad, 54 Mo. App. loc. cit. 297; Blanchard v. Railroad, 60 Mo. App. 267.

BROADDUS, J.—There were three counts in the petition. Plaintiffs abandoned the first and the case was tried on the second and third counts, on both of which there was a finding for the plaintiffs, from which the defendant has appealed.

The substance of the second count is, that on the twenty-ninth day of August, 1897, the plaintiffs delivered to defendant at Maysville, Missouri, eight carloads of cattle and

one carload of hogs, which defendant, for a certain considera-
tion, agreed to deliver to the Union Stock Yards in Chicago
in a reasonable time; that twenty-three hours was a reasonable
time for said delivery; but that the defendant, without any just
excuse, failed to so deliver said cattle and  hogs; that they
should have been delivered at the said place of destination on the
morning of August 30, 1897, but were not so delivered.   It
is then alleged that the delivery was not made until about 12
o'clock of said last-named date; that they arrived too late for
that day's market; that there was a good market at that time for
the animals, which they failed to get the benefit of on account
of the delay.   That there was no market for the class of hogs
and cattle belonging to plaintiffs, on the afternoon of the day
of their arrival, nor on Tuesday, the next day; and that they
were compelled to keep them until Wednesday next thereafter,
when they were sold at the highest market price.  The plain-
tiffs claim as damages the difference between the price for
which the hogs and cattle were sold, and the market price on the
morning of August 30, together with expense of keeping and
the shrinkage of the animals.

The third count is for cattle shipped by a firm doing busi-
ness under the name of Adcock & Whitton, from Gallatin,
Missouri, on August 28, 1897, which should have arrived at
their destination, the Union Stock Yards, Chicago, about mid-
night August 29, in time for the Monday morning's market of
the thirtieth of said month.   The claim for damages is predi-
cated upon a similar condition of facts as those stated in the
second count and only differ in the matter of detail.   The claim
of said firm had been assigned to the plaintiff.

The defendant company answered by a general denial,
except admitting that it was a common carrier and a corpora-
tion.   The cause was tried before a jury.   Many objections
were made to the admission and rejection of evidence, but the

principal matter urged here is that plaintiffs' instruction number three, as to the measure of damages, was erroneous. As the case must be determined upon the merits or demerits of said instruction, we incorporate it herein. It reads:

"If the jury find for the plaintiffs, in estimating their damages they may take into consideration the difference in the reasonable market price of said cattle and hogs on said market on the thirtieth day of August, 1897, at the earliest hour of said day at which the defendant, by the use of ordinary care and diligence in the transportation of said stock, might have delivered the same at said market, and the price for which the same was actually sold, provided said latter price was the best which could be obtained after the arrival of said stock by the use of care and diligence in the sale of the same, and was the highest market price obtainable for said stock after their arrival, and may also take into consideration the extra shrinkage on said cattle, if any, and the extra cost of feeding the same, if any, caused by having to hold said cattle over."

The evidence in the case preponderates in favor of the plaintiffs' contention that there was no market for the class of stock in question after noon Monday, August 30, and that Tuesday, the day following, was not a good market day as a rule for them and that they could not have been sold profitably on said last-named date. There was some evidence on the part of the defendant that there was a market for the stock on the afternoon of August 30, and on Tuesday, the following day. The cattle were sold on Wednesday for less than the market price of the forenoon of Monday, the thirtieth. The defendant asked, and the court, among others gave its instruction number six, which is claimed to be in conflict with that of number three given for the plaintiffs, as above set forth. And as the defendant claims that it sets out the true rule of damages, we incorporate it also, that it may be considered with that of

number three of plaintiffs.   It is as follows:

"6.   The court instructs the jury that by the evidence
the market for cattle in the Chicago market did not close until
three o'clock p. m. Monday, August 30, 1897, and it is ad-
mitted by both parties that the cattle were at the market by
twelve o'clock m. on said day, and the court further instructs
the jury that in considering the question of damages as relates
to any loss on the cattle by difference in market price or market
value if any, if you should find for plaintiff, you should only
take into consideration the market price of such cattle on their
arrival at the market on Monday, August 30, 1897, and their
market price at the time they should have arrived there, if
there had been no delay in transportation."

A casual inspection discloses that there is a material con-
flict in the two instructions.   That of the plaintiffs makes the
difference between the market price of the forenoon of August
30 and the highest market price of Wednesday, September 1,
with extra shrinkage and cost of feeding, the measure of dam-
ages, while that in number six, given for defendant, makes the
difference between the market price at the time of the arrival
of said cattle and the time they should have arrived, the measure
of damages.   This latter instruction contains the rule which has
been held to be the correct one by the courts in this State by
numerous decisions.   Gann v. Railroad, 72 Mo. App. 34;
Wilson v. Railroad, 66 Mo. App. 388; Glascock v. Railroad,
69 Mo. 589; Faulkner v. Railroad, 51 Mo. 311.

The plaintiffs support the theory of their instruction on
Douglass v. Railroad, 53 Mo. App. 473 and Glasscock v. Rail-
road, 86 Mo. App. 114.   In the first of these two cases, the evi-
dence showed, as in this, that the cattle ought to have arrived in
time for the early market of the second day after their ship-
ment, but as they did not, plaintiff was compelled to hold them
over to the succeeding day.   Upon examination of the briefs of

counsel in that case, and the opinion of Judge GILL, who delivered the opinion of the court, we do not find that the question here involved was raised in that case. The sole question determined therein was whether the defendant was liable under the evidence—a question alone of diligence. The measure of damages was not raised. In the Glasscock case, the court says:

"Defendant's counsel is right in the contention that in this character of cases it is generally correct to say that plaintiff, if he recover at all, is entitled to the difference in the market value at the time the cattle should have arrived and the time they did arrive. In view, however, of the facts of this particular case, the above instruction was just and right" (alluding to an instruction like plaintiffs' number three in this case). "It is predicated on evidence which showed that November 25 was Thanksgiving day, that the cattle market at the Chicago Stock Yards uniformly closed at noon on said holiday and did so on the day when plaintiff's cattle arrived. But plaintiff's cattle were not in time for the market of that day, and he was compelled to hold them over for the market of the following day. If the plaintiff was, by the fault of defendant, deprived of the market of November 25 by reason of an unreasonable delay in delivering the cattle, he ought then to be allowed to dispose of them the first market day thereafter, and hold defendant for any loss he may have reasonably suffered."

There is neither an apparent or real similarity between that case and the one at bar. In the one, the market closed at 12 o'clock m., in the other at 3 o'clock p. m. of the day of the arrival of the cattle. Besides, on Tuesday, the day following, there was a market also, perhaps not so good as that of Monday in the forenoon, but still a market, which plaintiffs did not avail themselves of, but for the purpose of securing a better

market held them over until the following day, thereby specu-
lating upon the fluctuation of prices. The construction put
upon the decision of the Glasscock case, supra, is not warranted
by the language used therein, and there is nothing therein to
imply that the shipper may hold his cattle at the expense of the
defaulting carrier for any other market than the one prevailing
at the time of the arrival of the cattle. The cattle did not
arrive for the market of November 25; their arrival was for
the following day and was so treated by the court. There was
no attempt to speculate upon the default of the carrier, as in
this case, but the owner acted promptly and sold upon the first
market after the arrival of the cattle.

It follows, therefore, that instruction number three, given
for the plaintiffs, was erroneous and that number six given for
defendant was the true rule for the damages if made to apply
to the facts of the case. The difference between the two are
irreconcilable and the jury were practically left without any
guide as to the measure of damages, without disregarding one
or the other, which it must have done judging by the result.

Cause reversed and remanded. All concur.