# Bass Furnace Co. v. Glasscock.

*Action for Breach of Special Contract of Employment.*

1. *Contract of employment; drunkenness as ground of discharge.*— Drunkenness in public by an employee, while in the service of his employer, manifesting itself in boisterous and disorderly conduct, towards either the employer or third persons, though not habitual, justifies his discharge, being a violation of the stipulation, implied in every contract of service, that the employee will conduct himself with such decency and politeness of deportment as not to cause injury to the business of his employer.

2. *Proof of mismanagement of business, and consequent loss.*—When plaintiff sues for the breach of a contract of employment, alleging that he was discharged without cause, a witness for the defendant can not be allowed to testify, that the plaintiff so mismanaged the business as to cause the loss of a large sum of money to the defendant; such evidence being the mere statement of an opinion, and also objectionable on the ground of irrelevancy.

3. *Proof of quantity.*—A witness, or party testifying as a witness, may state that, "according to his best judgment," he delivered four hundred bushels of coal per day, the quantity called for by his contract; such evidence, though matter of opinion or judgment, being the best generally obtainable in reference to such matters.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. JAMES AIKEN.

This action was brought by Thomas Glasscock against the appellant, a private corporation, to recover damages for an alleged breach of a contract of employment; and was commenced on the 4th January, 1884. The complaint contained two special counts on the contract, and the common count for work and labor was added. The defendant's pleas, as set out in the record, signed by his attorneys, were—1st, *non assumpsit;* 2d, "that plaintiff failed to perform his said contract from drunkenness and neglect, whereby defendant had been and was being greatly damaged, and therefore defendant discharged him, and for that cause only;" 3d, "the general issue;" and 4th, set-off. But the recital of the judgment-entry is in these words: "Defendant, by leave of the court, withdraws his plea of *non assump-*

[Bass Furnace Co. v. Glasscock.]

*sit*, marked No. 1, and files plea No. 2, the general issue ; and issue being joined on this plea, came a jury," &c., who returned a verdict for plaintiff, for $386.36.

By the terms of the contract, as alleged and proved, the defendant employed the plaintiff, at the stipulated compensation of $50 per month, to burn and convert into coal, for use at its furnace, all the wood on two tracts of land, together containing 200 acres ; the defendant cutting and hauling the wood, and the plaintiff agreeing to make and deliver 400 bushels of coal per day on an average. The plaintiff commenced to work in June, 1883, and continued until the 6th December, when, according to his testimony, the superintendent of the defendant's business "took away the teams and hands from the coaling," and discharged him ; saying, "that he wanted to change the contract, and let out the job by contract." The plaintiff testified, among other things, "I delivered, according to my best judgment, 400 bushels of coal per day on an average ;" and the court allowed this evidence to go to the jury, against the objection and exception of the defendant. The defendant introduced evidence tending to show that the plaintiff had neglected and mismanaged the business in which he was employed, whereby loss to the defendant resulted, and that he was discharged on account of neglect and drunkenness ; and in this connection proposed to prove by one Brandt, "that the plaintiff so conducted said coaling, and so mismanaged it, that defendant had lost $2,000 during the time he run said job." The court excluded this evidence, on objection by the plaintiff, and the defendant excepted. All the evidence relating to the plaintiff's drunkenness is stated in the opinion of the court, and also the charge of the court below in reference to drunkenness as an excuse for his discharge. The charge of the court, and its several rulings on the evidence, are now assigned as error.

WALDEN & SON, for appellant.

MATTHEWS & DANIEL, *contra*.

SOMERVILLE, J.—1. The first portion of the charge given by the court, to which exception is taken, raises the inquiry, under what circumstances an employer is justified in discharging an employee from his service on the ground of drunkenness. The plaintiff was employed by the defendant company, to reduce to charcoal, or, as expressed by the witness, to "*coal*" the wood on a tract of land owned by the company, for which he was to be paid wages at the rate

[Bass Furnace Co. v. Glasscock.]

of fifty dollars per month. The evidence tends to show that the plaintiff, a short while before his discharge, was drunk on premises of the defendant, where an iron furnace was in process of operation, about four miles away from "the coaling," as it is called, and, while so intoxicated, he there "raised a disturbance, and had a fight with a man." At another time, he was seen "drunk, in a wagon with some negro women, going towards the coaling." This is all that is shown by the evidence bearing on this point, no details being given. The court charged the jury, that "the fact that the plaintiff was drunk once, or a number of times, at the furnace or elsewhere, during his employment under the contract, is no evidence against plaintiff's right of recovery, unless drunkenness *incapacitated* and caused the plaintiff to fail in his part of the contract." Is this a correct statement of the law on this subject?

To justify an employer in discharging a servant, or employee, the rule, no doubt, is, that the servant must have been guilty of conduct which can be construed to be a breach of some express or implied provision in the contract of service. It seems to be settled, that it is an implied part of every contract of service, that the employee will abstain from habitual drunkenness, or repeated acts of intoxication, during the period of his employment. If he be guilty of this indulgence, his conduct will justify his dismissal.—2 Addison on Contr. (Morgan's ed.), § 890; *Wise v. Wilson*, 1 Car. & K. 662; 2 Parsons on Contr. 36, *note* (f); *Gonsolis v. Gearheart*, 31 Mo. 585; *Huntington v. Claflin*, 10 Bosw. (N. Y.) 262. There may be circumstances, however, under which a single act of drunkenness would warrant a servant's discharge; as, for example, in the case of a minister of the gospel, where the act might bring personal reproach, and tends to degrade the moral standard of religion; or of a family physician, where it might result in negligence; or malpractice in pharmacy or surgery.—Wood on Master and Servant, § 111, p. 213. The same act when committed by a day laborer, in privacy, and when off duty, or on some rare occasion when great temptation was presented, might not be a sufficient excuse for his discharge. The rule is stated by a recent author to be, that "intoxication, while in service, is generally a good excuse for discharging a servant, particularly when it is habitual, and interferes with the discharge of his duties, or will be likely to. But it is held, that as to whether it is to be regarded as a proper excuse, depends upon the occasion."—Wood on Master and Servant, § III, p. 213. We do not doubt that public drunkenness of any employee, while in the service of the employer, and mani-

festing itself in boisterous and disorderly conduct, either towards the employer or third persons, is such misconduct as to constitute a violation of the stipulation, implied in every contract of service, that the employee will conduct himself with such decency and politeness of deportment as not to work injury to the business of the employer. This he can do by a single act of drunkenness, which may tend to offend the reasonable prejudices or tastes of the public, or impair their confidence, or render him disagreeable in social or business intercourse. The drunkenness of employees may well deter the patrons of any business establishment from continuing their business intercourse with it, especially when social contact is frequently necessary to its consummation. It may prove, also, equally offensive to the master or employer, who may justly regard sobriety as an indispensable element of efficient service. The charge of the court laid down the rule, that no drunkenness justified the plaintiff's discharge, unless it incapacitated him, and caused him to fail in the performance of his part of the contract. This, under the principles above declared, was erroneous, and must work a reversal of the cause. We may add, that the act approved February 17, 1885, entitled "An act to prevent public drunkenness," and making it a misdemeanor under certain circumstances, has no bearing on this case, having been passed after the present alleged cause of action.

2. It was not competent for the witness Brandt to testify, that the plaintiff so mismanaged the business, in which he was engaged, as to cause a loss of a large sum of money to the defendant, estimated at two thousand dollars, or any other amount. This was a mere matter of opinion of the witness, and was properly excluded from the jury. Losses and profits in business, moreover, are dependent upon so many ever changing and variable contingencies, unconnected with skillful management, that the existence of the one or the other, standing alone, affords no reasonable presumption as to the degree of skill or negligence with which a business is conducted. When labor and materials are high in price, and the products of manufacture are low, losses may occur even with the best possible management ; and so, when the converse of these propositions exist, large profits may result, despite the most unskillful management. For this reason, the proposed evidence was objectionable for irrelevancy.

3. The court did not err in allowing the plaintiff, when introduced as a witness in his own behalf, to state that, "according to his best judgment," he delivered to the de-

[Tutwiler v. Lane.]

fendant four hundred bushels of coal per day,—the amount called for by the terms of his contract of service. Quantity, like value, time, distance, and some other like matters, is one of the subjects in reference to which even a non-expert witness may express his opinion, when based on personal observation ; no better evidence being generally obtainable as to such matters, than mere approximate estimates, based on judgment or opinion.

We find the other rulings of the court to be free from error.

Reversed and remanded.