JAMES L. BENNETT, Respondent, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, November 7, 1910.

1. **CARRIERS OF LIVE STOCK: Delayed Shipment.** Plaintiff sued for damages for failure to deliver cattle at market in a reasonable time. The delay in arrival at market necessitated holding the stock until the next day, and the damages claimed are for shrinkage in weight, for feed, and a decline in price. The contract for shipment was in the name of plaintiffs vendor, but without his authority. *Held*, that plaintiff was entitled to recover by action in his own name the loss sustained by the defendant's delay in delivering said stock.

2. ———: ———: **Measure of Damages.** The measure of damages for delay in delivery of stock is the difference in the market price at the time the cattle should have been delivered and the time when they were in fact delivered, the amount paid for feed in holding for next day's market, and the loss in weight due to the delay.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes*, Judge.

AFFIRMED CONDITIONALLY.

*Paul E. Walker* and *E. C. Hall* for appellant.

(1) The cattle were shipped and the contract of shipment was made in the name of W. W. Silvius, as consignee, who testified that he was owner of part and was holding balance in his name to secure payment of the purchase money. The suit should have been in his name. Atchison v. Railroad, 80 Mo. 213; Harvey v. Railroad, 74 Mo. 538; Porter v. Raymond, 53 N. H. 519; Clubb v. Railroad, 136 Mo. App. 1; Hickman v. Craig, 6 Mo. App. 582; 3 Ency. Pl. and Pr. 826. (2) Plaintiff's instruction on the measure of damages seems to mean that the court either declared, as a

matter of law, that there was no market on the 13th, the day on which the cattle were delivered at the pens, or has given the instruction when there is no evidence to support it, in this, it tells the jury to find for the difference between the market when the cattle should have arrived and when they did arrive. They should have arrived for the early market of the 13th, for instance, but arrived before the market closed on the 13th, and there is no evidence of a difference between the early and late market of that day. Perry v. Railroad, 89 Mo. App. 49; Gann v. Railroad, 72 Mo. App. 34; Wilson v. Railroad, 66 Mo. App. 388. (3) Plaintiff did not give notice to defendant of injury to the cattle within the time provided in the contract, and cannot recover for shrink or for stale appearance. Moore v. Railroad, 127 S. W. 921; Leonard v. Railroad, 54 Mo. App. 302; Dawson v. Railroad, 76 Mo. 514; McBeath v. Railroad, 20 Mo. App. 445.

*Pross T. Cross* for respondent.

(1) The cattle in controversy were the property of plaintiff, and he was the real party in interest. This fact is clearly shown by the testimony of the witness Mr. Silvius and of the plaintiff, Mr. Bennett. Under all the evidence in this case defendant was guilty of a negligent delay, such as to make it liable in damages to plaintiff. Anderson v. Railroad, 93 Mo. App. 677; Eads v. Orcutt, 79 Mo. App. 511. (2) In the contract relied upon in this case, no rate whatever is named, but it is left blank. Therefore the provision limiting liability was without consideration and void. George v. Railroad, 214 Mo. 551; Kellerman v. Railroad, 136 Mo. 177; Richardson v. Railroad, 149 Mo. 311.

BROADDUS, P. J.—This is a suit for damages against the carrier for its failure to deliver cattle shipped to market within a reasonable time.

On the 12th day of August, 1907, the plaintiff through his agent shipped eighty-eight head of cattle to Kansas City for the purpose of selling them on the next day's market. The cattle were driven to Cameron station late in the afternoon of the day mentioned. The agent had previously made arrangements with defendant's station agent for the necessary cars for the shipment. The cattle were in defendant's pens at 7 o'clock p. m. The usual time for the shipment of live stock to Kansas City was 9 or 10 o'clock p. m. The defendant's train was in the switch yards of the company several hours before it arrived at the pens to take on the cattle, and they were not loaded until near midnight. The train carrying the cattle did not leave the station until about two o'clock. Before it reached Turney, the second station from Cameron, the engine broke down and had to be pushed in by a train that was following. At Turney the second train took up the cattle and proceeded on its journey, but was delayed at Holt and other stations on the way in order to let passenger trains pass. There was also a delay at Harlem and another at the Union Depot. The train did not cross the Missouri river until about 11 o'clock a. m., and it did not arrive at the cattle pens in time to be unloaded and the cattle taken to the pens at Kansas City until about 2 o'clock p. m.

It was shown that the business of buying and selling cattle usually closed at 3 o'clock p. m. each day. The plaintiff testified that owing to the shortness of time after the arrival of the cattle and the closing of the days' business at the pens, he did not have the opportunity to avail himself of that days market, as most of the buying and selling was over shortly after two o'clock. Plaintiff kept his cattle over and sold them on the next day's market; in the meantime there had been a decline in the price of cattle.

Plaintiff introduced evidence tending to show that owing to the delay in delivering his cattle they suffered an additional shrinkage in weight over and above the usual shrinkage had they been delivered in time; that the delay had a bad effect on their appearance which caused a depreciation in their selling price, and gave evidence of their amount of shrinkage, and the difference between the price of cattle on the day of their arrival and the next day when they were sold; and also for additional cost of their keep for one day. The cattle were not weighed before shipment. The plaintiff had just previously bought them of W. W. Silvius at a certain price per head. Their weight including two other head was estimated by the parties at 112,230 pounds. It was shown that the buyer and seller were competent by their experience to arrive at the weight of such animals, approximately by their appearance. However, the seller afterwards weighed two of the number and from their weight as a basis he came to the conclusion that the estimate made upon them was below, rather than above their true weight. The extra shrinkage was estimated at thirty pounds for each animal and for depreciation in value by reason of their stale appearance, ten cents per hundred weight. They sold at prices ranging from $1.75 to $5.85 per hundred.

The evidence was that Silvius shipped the cattle in his own name and signed the contract of shipment. But plaintiff testified that he did not authorize him to so ship them. The defendant's evidence tends to contradict that of plaintiff as to some matters, and it exhibited a written contract for the shipment and offered it in evidence but the record fails to show that it was introduced. One of the conditions in said writing is as follows: "That as a condition to claiming or recovering damages for any loss or injury to or detention of live stock, or delay in transportation thereof, covered by this contract, the second party, as soon as he discovers such loss or injury, shall promptly send

notice thereof in writing,'' etc.   It is admitted that no such notice was given.

It seems that the jury in fixing plaintiff's damages took as a basis the weight of ninety head as estimated by the parties, whereas two head of the cattle were not included in the sale but were retained by Silvius, but shipped to market with the eighty-eight head.   The jury returned a verdict for plaintiff in the sum of $432.90, from the judgment thereon defendant appealed.

The principal contention of defendant is, that, under the pleadings and evidence plaintiff was not entitled to recover. It is insisted that plaintiff's failure to give notice of his damage forthwith upon the discovery thereof precludes him from recovery.   But as the contract providing for such notice was not introduced in evidence, that question is no longer in the case.

It is insisted that as the animals were not weighed before shipment, that there was nothing before the jury upon which to base a finding for damages of any kind. It is well established rule of evidence, that the best evidence to be had, shall be introduced to prove the fact sought to be established.   The best evidence to establish the weight of the cattle would have been to have weighed them upon the scales.   This was not done, but their weight was estimated by experts.   This was not the best evidence, but it was the only evidence of such weight.   It would be a poor rule of law that would turn a suitor out of court because he was not able to produce the best possible evidence to prove his cause.

There is no doubt but what it was shown that had defendant shipped plaintiff's cattle at the usual time they would have arrived in ample time for the next day's market.   And that their arrival was so late that they could not advantageously be put on sale that day, and that they were consequently kept over until the next day. The rule in such cases is stated as follows: ''Where

the carrier delays the delivery of stock to the loss of the shipper, the measure of damages is the difference in the market price at the time the cattle should have been delivered and the time they were in fact delivered." [Parry v. Railway Co., 89 Mo. App. 49.] There the hogs should have been delivered on the morning of August 30, 1907, but were not delivered until about 12 o'clock; that there was no market after that hour for them, and that they were held over until the next day on which particular day it being Tuesday, as a rule was not a good market day for them, and consequently they were kept over until the next day and sold at a loss. The court in commenting on the case said that, "On Tuesday following there was a market also, but not so good as that of Monday in the forenoon, but still a market, which the plaintiffs did not avail themselves of, but for the purpose of securing a better market held them over until the following day thereby speculating upon the fluctuation of prices." The court did not say that the failure of plaintiff to put the hogs on the market in the afternoon of the day of their arrival, and too late for the morning market would subject them to the charge of speculating upon the fluctuation of the market prices.

In a case when the cattle ought to have arrived in time for the morning market but were delayed an unreasonable time and did not arrive in time for the morning market and the plaintiff kept them over and sold them the next day when the market was not so good as the previous morning, he was permitted to recover. This and that case are similar in every important particular. [Douglass v. Ry. Co., 53 Mo. App. 473; Glasscock v. Ry. Co., 86 Mo. App. 114.]

Defendant contends that the plaintiff was not a proper party, but that the action should have been in the name of the consignor. It is law that the party in whose name the contract for the transportation of cattle was made, was the proper party to sue. Who

the owner was, immaterial.'' [Atchison v. Railway, 80 Mo. 213; Club v. Railroad, 136 Mo. App. 1.]

As the contract was not introduced as evidence we are not able to determine whether or not it contained any recital to the effect, that plaintiff was the owner of the cattle. The oral testimony, however, does show that they were shipped in the name of Silvius, the agent, and that he was the consignor. But, however that may be it is not a matter the defendant can take advantage of at this late day. As the defect of party plaintiff was disclosed by the petition, defendant should have taken advantage of it by demurrer, otherwise he has waived it. There are other errors assigned which we do not think are of sufficient importance to require discussion.

The error of the jury in estimating plaintiff's damages upon the basis of 112,230 pounds, the weight of ninety head of cattle instead of upon the eighty-eight head, was an excessive verdict. As however, the plaintiff has signified his willingness to enter a remittitur of $19.00, which is a sufficient amount to cover the excess, we will affirm the judgment on condition that he make such remittitur within ten days from the filing of this opinion, otherwise the judgment will stand reversed. All concur.

## ON MOTION FOR REHEARING.

In the opinion in this case it is stated that the petition showed on its face the defect of party plaintiff if there was such, in which we were incorrect and the inadvertence is made the basis for the motion for a new trial. The error was not material, as all the evidence showed that the plaintiff was the owner of the cattle, and it was shown beyond dispute that the agent had no authority from him to ship them in his, the agent's name, as consignor and consignee, and for that reason plaintiff was the proper and necessary party.

Notwithstanding the consignor is the proper party to bring suit on a carrier's contract for transportation of property, it held, however, where the consignor has no interest in the goods he will be confined to assumpsit and cannot sue in an action *ex delicto* for breach of duty by the carrier. [Central American S. S. Co. v. Railroad, 128 S. W. 822; Nelson v. Ry. Co., 72 Pac. R. 642; Whittenton Mfg. Co. v. Memphis & O. R. Packet Co., 21 Fed. 896.]

As the action is to recover damages for a breach of duty it is an action *ex delicto,* the plaintiff was the only party who could maintain it. Motion for rehearing overruled.