# ELIZABETH PENNINGTON, Respondent, v. THE KANSAS CITY RAILWAYS COMPANY, Appellant.

### Kansas City Court of Appeals, May 5, 1919.

1. **NEGLIGENCE: Personal Injury: Evidence.** Evidence examined and found to sustain a verdict for the injured party.

2. **———: Pleading: Instruction.** Petition and instruction examined and found that the latter is justified by the former.

3. **———: Humanitarian Rule: Motorman: Lookout.** Motorman must be on lookout in running a street car on streets in a populous city, and in a case on the humanitarian doctrine, he will be *held* to see what he might have seen if he had been looking.

4. **———: Expert: Hypothetical Question: Objection.** Objection to a hypothetical question propounded to an expert must be accompanied by a suggestion of the omission which renders it improper.

5. **———: Impeachment: Bribery: Witness.** For the purpose of discrediting a witness for one party he may be asked on cross-examination by the other party if he had not attempted to bribe a juror on a former trial of the same case.

6. **———: Bribery: Witness: Evidence: Fabricated Story.** Evidence that one of defendant's claim agents who assisted in the trial of personal injury cases offered a bribe to a prospective witness for the plaintiff to fabricate a story known to be false is properly received as tending to show that defendant had no just or legal defense on the truth of the case.

7. **———: Claim Agent: Bribery: Witness.** For a claim agent of a corporation defendant to say to a witness for plaintiff whom he is endeavoring to have change his testimony that it is "Worth fifty to us," is an attempt at bribery with money.

8. **———: Bribery: Counsel: Argument.** Where there has been evidence of an attempt to bribe one of plaintiff's witnesses, his counsel has a right to refer to it in argument to the jury.

9. **———: Personal Injury: Mental Derangement: Excessive Judgment.** A boy, 15 years old, was badly injured through the negligence of a street railway company. He was earning substantial wages. His bodily injury was severe and permanent, and caused a mental derangement so that he was helpless and his mother (a widow) had to care for him and wait upon him as though a child. It was. *held* that a judgment in her favor for $7500 was not excessive.

Appeal from Jackson Circuit Court.—*Hon. T. J. See-horn,* Judge.

AFFIRMED.

*T. J. Madden* and *Harry R. Freeman* for respondent.

*Clyde Taylor, R. J. Higgins* and *Ben T. Hardin* for appellant.

ELLISON, P. J.—Plaintiff is the widowed mother of Clarence Pennington, a boy fifteen years old when he was permanently injured by one of defendant's street cars running over him. Charging that the injury was occasioned through the negligence of defendant's servants in operating the car, she brought this action for loss of services of the boy until he shall arrive at the age of twenty-one years and for the expense of his care and attention during that time. She obtained a verdict for $10,000. The trial court required a remittitur of $2500 and judgment was then rendered for $7500.

The scene of the occurrence was on the south side of Twelvth street, one hundred and twenty feet east of the intersection of that street and Brooklyn avenue, about in front of a "picture show" building in Kansas City. The injury happened after dark and was occasioned by an east-bound Twelvth street car. It appears that there was a political meeting being held in this building and that plaintiff, with his thirteen year old brother and an older boy all of whom lived near a mile away, concluded to attend. They walked the entire way and when they arrived across the street from the meeting place, started over, one behind the other, the older boy in the lead and Clarence in the rear; they were perhaps three feet apart, and, according to several witnesses, were apparently absorbed in looking at the pictures in the lighted window of the "picture show" building. The streets and buildings were well lighted, including a drug store at the corner, so that a person

crossing the street and going over the tracks of the railway, could have been plainly seen by the motorman on the car in question if he were looking. Twelfth street, in this neighborhood, was shown to be a business thoroughfare with people constantly passing and at the time the boy was hurt, persons were gathered at the corners waiting for cars on that street or Brooklyn avenue.

There was also evidence in plaintiff's behalf tending to show that the Twelvth street car, in question, had stopped on the west side of Brooklyn and had started rapidly towards the boys as they were crossing the street. They crossed the north track and entered on the south track (the one on which the car was coming) neither of them looking for a car and very probably not thinking of one. The oldest boy and the- younger brother of the Penningtons cleared the track, but Clarence was caught and injured in a permanent and most distressing way, both physically and mentally.. He was carried to the drug store and finally to a hospital.

There was evidence further tending to show that the motorman gave no warning and came rapidly against the boy from the fact he (motorman) was not looking ahead, but had at the moment left his place of control by stepping to the door at the side of the vestibule to make two boys get off the front car step on which they had jumped as the car started up.

Several persons witnessed the whole affair and the verdict vouches for the correctness of their view of it. The angle at which the boys crossed the street, together with the way they were looking would have a tendency to prevent them observing the approaching car. At any rate, we think the evidence abundant which tends to show they were wholly taken up with the thought of the meeting and the sight of the pictures.

The foregoing is supported by a number of witnesses of different callings in life. Their statement of the tragedy and the reasonableness. of their testimony makes us readily accept the verdict of the jury and approve the trial court's action in overruling the de-

murrer to the evidence. On this latter proposition defendant cites many authorities to the effect that in a humanitarian case the defendant is only liable for failure to exercise care after discovering danger to the injured party. But in operating a car in a populous city what he might have seen by looking is the same as if he had actually seen.

Among the first complaints made by defendant is that embodied in objections to instruction No. 1, given for plaintiff. The objection is that the negligence charged in the petition is not hypothesized in that instruction. The negligence charged in the petition was that "said injuries were due to and occasioned by the negligence of defendant's servants in charge of said east-bound car, in that Clarence Pennington in approaching and crossing the east-bound track was in a position of danger and unaware of the approach of said car and no reasonable lookout was maintained and no steps were taken by said servants to warn plaintiff's said son of the approach of said car or to diminish its speed or to stop the same and said car was caused and permitted to strike and injure the plaintiff's said son after said servants in the exercise of ordinary care could have seen said son in a position of danger or going in a position of danger and that he was unaware of the approach of said car, when by the exercise of reasonable care, in the use of the bell or the appliances to reduce the speed or to stop the same, said servants could have avoided said injury to plaintiff's son." The negligence hypothesized in the instruction was that "the motorman in charge of said car, in the exercise of ordinary care, could have seen and realized that said Clarence Pennington was in danger of being struck by said car and that said Clarence Pennington was unaware of the approach of said car and that thereafter said motorman in the exercise of ordinary care in the use of the bell to warn him of his danger, or of the appliances to reduce the speed of the car, or to stop the same, could have avoided injuring said Clarence Pennington and that said motorman negligently failed to

so use said means to avoid striking and injuring him and as a direct result'' Clarence was struck, etc.

It will be noticed that in the negligence charged it is alleged that the motorman did not keep ''a reasonable lookout,'' while in the negligence submitted those words are not used. To say that the motorman did not keep a reasonable lookout is in effect, only saying that he did not look. The instruction submitted whether the motorman by ordinary care could have seen and realized that the boy was in danger, etc. There is no substantial difference. The instruction is further criticized in that it is said to assume issuable facts. We think the criticism not well made.

We see no ground for defendant's objection to plaintiff's instruction No. 2, on the measure of damages. It is in every way proper.

We will here notice defendant's complaint of the court in refusing its instruction No. 11, since we may, at the same time, dispose of other suggestions made in the argument. The instruction stated that it was not the duty of the motorman to keep a ''lookout for persons who might be crossing the street'' at the place in controversy. The evidence showed that this was a much used street in the center of a large city and at this particular place a moving picture show building was in use. [Kinlen v. Railroad, 216 Mo. 145, 156; Ellis v. Street Railway, 234 Mo. 673, 679; Deschner v. Railroad, 200 Mo. 310, 329.] Authorities cited by defendant are not applicable. There is much other criticism offered which we have examined and find to be unsubstantial.

Objection was made to a hypothetical question put to an expert on the distance in which a car might have been stopped. The objections made were insufficient. The first one was that ''he (plaintiff's attorney) has not put enough in it.'' The part thought to be missing should have been embraced in the objection. [Kinlen v. Railroad, 216 Mo. 145, 174; DeMaet v. Storage Co., 231 Mo. 615, 620; Burton v. Railroad, 176 Mo. App. 14, 20.] Objection is made in brief to witness stating the distance as ''*about* forty-five or fifty feet.'' That

objection was not made at the trial. Nor was there any objection to the final answer in which the hypothesis of the car being loaded was incorporated.

It appears that there had been a former trial of this case. A witness was introduced by defendant at this trial and gave very important testimony in its behalf. He was in defendant's employment as a motorman on another car when the collision in question occurred. On cross examination plaintiff's counsel asked him if he had not attempted to bribe a juror in the former trial by offering him one sum of money for a verdict for defendant and a smaller sum if there was disagreement of the jury. The witness denied he had attempted the bribery. Afterwards the exjuror was called by the plaintiff and he testified, over defendant's objections, that the attempt had been made by the witness. The evidence was admitted for the purpose of discrediting the witness; and we think the ruling was right. [30 Amer. & Eng. Ency. of Law, 1102; 40 Cyc. 2684; Geary v. The People, 22 Mich. 220, 222; Hastings v. Stetson, 130 Mass. 76; Kid v. Ward, 91 Iowa, 371.] This witness was asked by defendant to state the reason he did not report the attempt to bribe him. He answered by giving among other reasons, that he "thought there were men higher up that was putting him up to this." Defendant then asked that that answer be stricken out but the court refused to do so. In this there was no error, since the answer was directly responsive to the question.

Closely associated with the foregoing the record disclosed the following: Defendant had a claim agent in its employ and he assisted in the trial of cases, including the one before us, by interviewing witnesses and the like. Plaintiff offered evidence that this man had attempted to bribe one of her principal witnesses and sought to have him change his testimony in highly important particulars. The evidence was properly admitted. It tended to show a sense of guilt and that defendant thought its cause was an unrighteous one and could not succeed by honest methods. [State v.

Norton, 121 Mo. 537, 551; State v. Alexander, 119 Mo. 447, 461; Fulkerson v. Murdock, 53 Mo. App. 151, 154; 1 Greenleaf on Ev., 195a.] The rule and the reasons supporting it are strongly stated and illustrated in the following cases. [McHugh v. McHugh, 186 Pa. St. 197; Chicago Ry. Co. v. McMahan, 103 Ill. 485; U. S. Brewing Co. v. Ruddy, 203 Ill. 306; Hastings v. Stetson, 130 Mass. 76, supra; Kidd v. Ward, 91 Iowa, 371, 376, supra.]

During the discussion over the question whether the foregoing evidence should be admitted, it developed that after the alleged bribe was offered to the juror in the former trial, it became known to the court composed of the same judge who was presiding at this trial and some investigation was had. Defendant's objections embraced a demand for the discharge of the jury and continuance of the case for the alleged reason that the cross examination of the witnesses had prejudiced the jury, and that "defendant wanted the judge as a witness." This request was overruled. As nothing had occurred that was not within plaintiff's right in cross examination, the court's ruling was proper.

Defendant insists that after the testimony was admitted, it did not show an attempt to bribe had been made. This position is based on a mere play of words. Defendant asked the witness, "Did he offer you a penny? Answer. He said, 'it is worth fifty to us. I never have said that he offered me any money.' Question: Now then you say that he said, 'It is worth fifty to us.' Now I will ask you again, did he say at any time, 'It is worth fifty to you,' Answer. 'No he didn't.' " At other parts of the testimony the witness had stated that the agent had said to him, "It is worth fifty to us, and I will just O. K. a voucher now, and there will be no trouble about your getting the money." The witness disclosed the particular object of the agent. He (witness) had made a drawing of the tracks and ground which showed where the boy was picked up after being struck by the car. The agent said to him; "Its worth fifty to us to have the boy lying here

(indicating between .the tracks) I said 'I am not that kind of a fellow, I don't do business that way.'' The witness then reported what had taken place to one of the Judges of the Jackson county circuit court. That such evidence was admissible there can be no doubt.

Counsel for plaintiff referred to this in argument as an attempted bribe of a witness by defendant. He asked, ''Which side gentlemen of the jury has offered fifty dollars to a witness to change his testimony.'' We think the argument was justified by the evidence. There is no substance in the objection that defendant was not connected with the attempt. The defendant being a córporation, could only act through agents and this particular agent, as we have said, assisted at the trial of cases against defendant and he helped in preparing cases for trial, by interviewing witnesses and the like.

The remaining objection to the judgment is that it is excessive. We think not. The case presents some extraordinary phases. The widowed mother has not only lost the services of her son until he becomes of age, covering a period of more than five years, but his injury has caused him to lose his mind, and she has to support him and care for him as though a small child. The value of such service was shown and the amount of the judgment is well within what the figures make out.

The record is without error and we must affirm the judgment. All concur.