C. F. DENNEY d/b/a Joplin Lime Products Company, Plaintiff-Respondent,

v.

SPOT MARTIN, INC., Defendant-Appellant.

No. 7783.

Springfield Court of Appeals.

Missouri.

Oct. 21, 1959.

11. Lyons v. Superior Court, 43 Cal.2d 755, 278 P.2d 681, 685.

12. People v. Harrington, 301 Ill.App. 185, 21 N.E.2d 903.

David Waldman, Kansas City, Clifford H. Casey, Joplin, for defendant-appellant.

Paul E. Bradley, William O. Russell, Joplin, for plaintiff-respondent.

STONE, Presiding Judge.

■ In this jury-tried action on quantum meruit for the reasonable value of chat removed by defendant, Spot Martin, Inc., from a chat pile which plaintiff, C. F. Denney d/b/a Joplin Lime Products Company, had a right to sell, defendant appeals from a judgment of $5,871.40. Defendant admitted in the trial court, and here admits, its indebtedness to plaintiff in the sum of $1,237.56, this figure reflecting defendant's contention that it removed from plaintiff's chat pile only 6,187.8 tons of the reasonable market value of 20¢ per ton. On the other hand, plaintiff's position has been and is that defendant removed not less than 15,300 tons of chat for which it is obligated to pay plaintiff the reasonable market value of 50¢ per ton. So, the basic factual issues upon trial were as to the quantity and reasonable market value of the chat taken by defendant from plaintiff's pile. Of the six points briefed by defendant on appeal, three (in substance) challenge the sufficiency of the evidence to make a prima facie case for the jury and the others assert error in the trial court's admission of or refusal to strike certain testimony hereinafter noted. Our factual review gives appropriate recognition to the trite rule that, in determining at this stage of the litigation whether a submissible case was made, we must consider the evidence in the light most favorable to plaintiff-respondent, must accord to him the benefit of all supporting inferences fairly and reasonably deducible from the evidence, and must disregard defendant's evidence except insofar as it may aid plaintiff's case. Songer v. Brittain, Mo.App., 272 S.W.2d 16, 20(7), and cases there cited.

Early in October 1956, one Mynatt "Bud" Sumners, then defendant's superintendent on a paving project at the Joplin airport, called plaintiff at his quarry near Joplin and inquired concerning the price of one-half or three-quarter inch crushed rock. Plaintiff quoted $3.00 per ton for quarrying and crushing such rock but suggested that he had a "small pile" of chat which probably would be suitable and sufficient for defendant's purposes, and which "would be 60 to 65 cents a ton" with defendant to haul and weigh every load. According to plaintiff, Sumners "was to go look at it and let me know if it was suitable"; but, having heard nothing from Sumners in the meantime, plaintiff discovered several days later that defendant was moving chat from this pile. Thereafter, plaintiff called Sumners' office "a number of times" and "left word for him to call" but never heard from Sumners. No weight tickets were given to plaintiff until "right at the end of the deal," and those finally supplied by defendant included none for the month of October 1956, and accounted for only some 3,000 tons of chat. Upon trial, plaintiff adduced positive evidence that some of defendant's trucks "would by-pass the scales without weighing part of the material" being hauled from plaintiff's chat pile.

Plaintiff testified that, prior to defendant's hauling, the chat pile "was built up like a hay stack or a loaf of bread"; that, at a point 15 feet east of the west perimeter of the pile, it attained a height of 20 feet; that, at a point 12 feet west of the east perimeter of the pile, it attained a height of 24 feet; and, that the pile was "an average of 22 feet in height." Plaintiff's witness Mattes, who operated "a high loader" at the pile when defendant first started to haul, stated that the pile attained a height of about 18 feet at a point 15 to 20 feet east of the west perimeter and that its maximum height at the other end (not estimated by this witness) was attained at a point about 15 feet west of the east perimeter.

Plaintiff's witness Southern had been around the pile "a lot of times" over a period of 20 to 25 years, had observed the pile immediately after defendant had ceased hauling from it, and had looked at it

again about two hours before testifying. Southern said that, on the day of trial, the chat pile "looked just like it did" at the termination of defendant's hauling; and, when defendant's counsel insisted on cross-examination that "you could be * * just a little mistaken in that the contour is identical," the extent of Southern's concession was "a little, but not much"—"might be one load of gravel, but that would be about all." Further cross-examination of Southern in an unsuccessful effort to show that "the pile could have spread out from where it was originally" elicited the positive, unequivocal answer that "it didn't," and the plain substance of his testimony was that defendant's loading did not scatter the chat and spread the pile, from all of which the jury reasonably could have found that there had been no material change in the perimeter of the pile during the extended period of Southern's intermittent observations.

Plaintiff's expert witness, Karl Koelker, a civil and mining engineer with 20 years of experience, personally inspected the residue of the chat pile several months after defendant's hauling had terminated, and prepared a contour map, drawn to scale, which outlined the perimeter of the pile not only at its base but also at various elevations. With this data and his further finding that one cubic foot of the chat weighed 100 pounds, Koelker determined that 1,622 tons of chat remained in the pile at the time of his inspection. Koelker also made two calculations as to the tonnage in the chat pile prior to defendant's hauling, and it is of the admission of this testimony that defendant here complains most bitterly. Both calculations, and both hypothetical questions in response to which they were received in evidence, were predicated upon Koelker's "actual observations of the location of the perimeter of the pile," his personal finding that a cubic foot of the chat

weighed 100 pounds, and certain assumptions as to the height and slope of the pile at each end. One hypothetical question assumed a height of 20 feet attained at a point 15 feet east of the west perimeter of the pile and a height of 22 feet attained at a point 12 feet west of the east perimeter, and the other hypothetical question assumed a lower height of 18 feet attained at a point 15 feet east of the west perimeter and a height of 22 feet attained at a point 15 feet west of the east perimeter. Upon the first hypothesis, Koelker testified that the chat pile would have contained approximately 18,103 tons and, upon the second hypothesis, approximately 15,960 tons.

■ As stated in his points relied upon, defendant complains that the hypothetical questions to witness Koelker "were based on facts not in evidence and did not contain sufficient facts upon which to base an opinion." In considering this assignment, we bear in mind the long-established rule of practice that "(i)t is the duty of counsel, objecting to a hypothetical question on the ground that it assumes facts not in evidence or that it omits facts shown in evidence, to point out what matters not in evidence are assumed in and what matters in evidence are omitted from such question. Failing to do this, the trial court is fully justified in overruling the objection." Scheipers v. Missouri Pacific R. Co., Mo., 298 S.W. 51, 54; Morton v. St. Louis-San Francisco Ry. Co., 323 Mo. 929, 953, 20 S. W.2d 34, 45; Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 803, 184 S.W. 2d 454, 456. In other words, an objection to a hypothetical question is legally sufficient and effective to present and preserve error only insofar as it specifically points out why the question is improper, what has been assumed or included without evidentiary basis, and what essentials have been omitted.[1]

1. Zeller v. Wolff-Wilson Drug Co., Mo. App., 51 S.W.2d 881, 884(6); Kirk v. Kansas City Terminal Ry. Co., Mo.App., 27 S.W.2d 739, 743(6); Gorman v. A. R. Jackson Kansas City Showcase Works Co., Mo.App., 19 S.W.2d 559, 564(13);

Plater v. W. C. Mullins Const. Co., 223 Mo.App. 650, 17 S.W.2d 658, 667(14); Ridenour v. Wilcox Mines Co., 164 Mo. App. 576, 147 S.W. 852, 857–858(6); Orr v. Bradley, 126 Mo.App. 146, 103 S.W. 1149, 1151(5). See also Brown v. Payn,

We are of the opinion that defendant's *present* contention that the hypothetical questions to witness Koelker "were based on facts not in evidence" is without merit because all of the assumptions hypothesized as to the height and the slope of the chat pile were *within* the maximum figures theretofore adduced in evidence and neither hypothetical question purported to have been predicated *solely* upon the testimony of either plaintiff or witness Mattes, both of whom had testified (as hereinbefore reviewed) concerning height and slope. But, in any event, "the insuperable difficulty" [Brown v. Payne, Mo., 264 S.W.2d 341, 346] with any appellate complaint that these hypothetical questions "were based on facts not in evidence" is that no such objection was made in the trial court and counsel did not there suggest what, if anything, had been assumed or included improperly. Scheipers v. Missouri Pac. R. Co., supra, 298 S.W. loc. cit. 54(6); Taylor v. Kelder, 229 Mo.App. 1117, 88 S.W.2d 436, 443(7); Zeller v. Wolff-Wilson Drug Co., Mo.App., 51 S.W.2d 881, 884(7).

With respect to the complaint that the hypothetical questions to witness Koelker "did not contain sufficient facts upon which to base an opinion," we observe that defendant's trial objections specifically asserted factual inadequacy only as to the perimeter of the pile and as to "the size of the contour." As for the perimeter, the hypothetical questions were bottomed upon Koelker's "actual observations of the location of the perimeter of the pile," which had been recorded with precision on his contour map; and, although Koelker's inspection of the pile was subsequent to termination of defendant's hauling, we cannot say that his computations were made upon factually inadequate data as to the location of the perimeter when the testimony of witness Southern showed that there had

been no material change in the perimeter as a result of the hauling. As for "the size of the contour" (presumably referring to the superficial outlines of the pile prior to defendant's hauling), the hypothetical questions assumed heights and slopes within the maximum figures in evidence, and the diagrams on exhibit 9 plainly show that Koelker's computations were predicated on plaintiff's evidence that, prior to defendant's hauling, the chat pile "was built up like a hay stack or a loaf of bread." The present suggestion of defendant's counsel that the evidence did not show whether there were important variations in the height of the ridgeline of the pile overlooks plaintiff's testimony, immediately following that concerning the heights at the east and west ends of the pile, that it was "an average of 22 feet in height."

Of course, the most accurate and the most desirable evidence as to the tonnage removed from plaintiff's chat pile would have been the actual weights upon the scales of all chat hauled by defendant. Bennett v. Chicago, R. I. & P. R. Co., 151 Mo.App. 293, 131 S.W. 770, 771; Mersky v. Leary, R.I., 134 A. 13, 14; Reynolds v. Stimson, 121 Kan. 422, 247 P. 847, 848. But if, as plaintiff insisted, the scale tickets tardily supplied by defendant accounted for only some 3,000 tons of chat, those tickets did not cover even the chat which upon trial defendant *admitted* having taken; and, on plaintiff's theory of the case (accepted by the jury), defendant's own wrongdoing in permitting some of the loads to by-pass the scales made it impossible for plaintiff to prove actual weights.

Even *defendant's* evidence clearly demonstrated the impossibility of determining with exactitude the tonnage taken from plaintiff's chat pile. Defendant's position was that it had taken chat for use on only two paving projects, one at the Joplin air-

Mo., 264 S.W.2d 341, 346(9); Peters v. Kansas City Rys. Co., 204 Mo.App. 197, 224 S.W. 25, 27–28(6); Pennington v. Kansas City Rys. Co., 201 Mo.App. 483, 213 S.W. 137, 140(6); Shafer v. Kansas City Rys. Co., Mo.App., 201 S.W. 611, 613(3); Beurskens v. Dunham, Mo.App., 193 S.W. 855, 857(4); Millirons v. Missouri & K. I. R. Co., 176 Mo.App. 39, 162 S.W. 1069, 1073(8).

port and the other at East Morland Shopping Center. When defendant first tendered $1,237.56 to plaintiff by letter dated February 18, 1957, defendant stated that "the following amounts would be the proper ones to be invoiced," to-wit, 5,387.8 tons of chat used on the airport project and an "arbitrary allowance" of 800 tons used on the shopping center project. Defendant had obtained the figure of 5,387.8 tons from one McGuire, a project engineer on the airport project and a witness for defendant upon trial, who said that 11,586.7 tons of "coarse mix asphalt" had been purchased by the City of Joplin for the airport project, that the "formula mix" called for 46.5% of "coarse aggregate" (i. e., $\frac{3}{4}$" maximum size chat), and that the mathematical computation of 46.5% of 11,586.7 tons of "coarse mix asphalt" showed the amount of "coarse aggregate" used to have been 5,-387.8 tons—"this figure is as accurate as can be calculated." But, passing the testimony of *plaintiff's* rebuttal witness, consulting engineer Allgeier who was McGuire's employer on the airport project, that defendant could have used as much as 12,967 tons of chat on the airport project, we note that witness McGuire himself conceded that there might have been 5% variance above or below the 46.5% of "course aggregate" which the "formula mix" contemplated. As for the shopping center project, defendant confidently wrote plaintiff on February 18, 1957, that 1,600 tons of "course aggregate" had been used

on that project, that "we can definitely trace 1,200 tons to other suppliers," but that nevertheless defendant was making an "arbitrary allowance" of 800 tons for chat from plaintiff's pile used on this project, thus "paying you (plaintiff) for an additional 400 tons." But, notwithstanding this generous gesture by defendant on *February 18, 1957*, we observe the interesting (and perhaps to the jury significant) fact that, by letter dated *February 14, 1957*, engineer McGuire had advised defendant that a computation (similar to that employed as to the airport project) showed that 839.8 tons of "course aggregate or chat" had been used at the shopping center. Furthermore, neither McGuire's computations nor defendant's tender took into consideration such chat as was "stockpiled" at defendant's asphalt plant after completion of the airport and shopping center projects, however large or small that stockpile may have been.

■ Many authorities have recognized that quantity frequently is not susceptible of precise determination and, with no better evidence obtainable, properly becomes an appropriate subject of opinion evidence by witnesses whose testimonial qualifications show them to be capable of formulating reasonably accurate and trustworthy opinions.[2] Certainly such evidence is admissible against a defendant whose deliberate action (upon the state of facts accepted by the jury as true) has made it impossible for

2. Wilson v. Buchanan County, 318 Mo. 64, 298 S.W. 842; Eyerman v. Sheehan, 52 Mo. 221; Gray v. Cooper, 217 Mo.App. 592, 274 S.W. 941, 945(11); Smith v. Sickinger, Mo.App., 221 S.W. 779, 780 (6); Bennett v. Chicago, R. I. & P. Ry. Co., 151 Mo.App. 293, 131 S.W. 770, 771 (2); Pope v. Ramsey & Ramsey, 78 Mo. App. 157, 161–162(1); Rothwell v. Dean, 60 Mo.App. 428, 433; Reynolds v. Stimson, 121 Kan. 422, 247 P. 847, 848(2); Marsh v. Rogers, 226 Mich. 290, 197 N.W. 540, 541(4); Frantz v. Ireland, 66 Barb. (N.Y.) 386, 388; Wishek v. United States Fidelity & Guaranty Co. of Baltimore, 55 N.D. 321, 213 N.W. 488, 489–490(1, 2); Mersky v. Leary, R.I., 134 A. 13, 14 (2); annotation L.R.A.1918A 664, 700;

20 Am.Jur., Evidence, § 808, p. 680; 32 C.J.S. Evidence § 498b, p. 154; Ibid., § 543, p. 271; Lawson on Expert and Opinion Evidence (2nd Ed.), p. 505; Jones on Evidence (5th Ed.), Vol. 2, § 405, p. 754; Ibid., § 411, p. 771. See also Bradley v. McDonald, 218 N.Y. 351, 113 N.E. 340, 352(7); Dawson v. Northwestern Const. Co., 137 Minn. 352, 163 N.W. 772, 775–776(4, 5); Bassett v. Stringer, 216 Miss. 766, 63 So.2d 234, 236 (2); Gulf, M. & O. R. R. v. Berman Bros. Iron & Metal Co., 249 Ala. 159, 30 So. 2d 446, 451(9); Bass Furnace Co. v. Glasscock, 82 Ala. 452, 2 So. 315, 317(3); Isaac v. McLean, 106 Mich. 79, 64 N.W. 2.

quantity to be proved with precision and exactitude, for the law will not wink at wrongdoing by permitting commercial piracy to generate illegal gains immune from discovery and recovery. Compare Shapiro, Bernstein & Co. v. Remington Records, Inc., 2 Cir., 265 F.2d 263, 272–273(5). With the professional competency of witness Koelker as a civil and mining engineer unchallenged, we are satisfied that his testimony as to the tonnages in plaintiff's chat pile before and after defendant's hauling constituted competent evidence; and, with the hypothetical questions eliciting Koelker's statements of opinion tested in the crucible of defendant's specific trial objections, we are unable to say that such questions were fatally insufficient or reversibly erroneous. Furthermore, we cannot ignore as of no probative value whatever the testimony of plaintiff, who had been "in the chat and rock business" for thirteen years, had loaded more than four million tons of chat, and was experienced in estimating the tonnage in chat piles, that the chat pile under consideration contained 20,000 to 25,000 tons before defendant began to haul from it. So, we conclude that, on its trial theory that not less than 15,300 tons of chat were removed by defendant, plaintiff made a submissible case as to *quantity.*

Defendant's points challenging the submissibility of the case, including the point alleging error in the giving of plaintiff's sole verdict-directing instruction, also complain that there was no evidence as to the *reasonable market value* of the chat at the place of delivery, i. e., at plaintiff's chat pile. But assuming, for the purposes of this opinion, that the testimony of plaintiff's witness Underwood did not supply competent and substantial proof of this essential element, defendant's original brief completely overlooked the testimony of plaintiff himself, *received without objection,* that the reasonable market value of the chat in the pile was 60¢ to 65¢ per ton. There was no failure of proof as to reasonable market value.

■ We are not convinced of the soundness of defendant's assertion, wholly unsupported by citation of authority, that "plaintiff's testimony and pleadings are so inconsistent as to destroy the probative value of plaintiff's statement that the chat was worth 60¢ to 65¢"; but, in any event, this assertion made for the first time in the argument section of defendant's reply brief presents nothing for appellate consideration, because the issues formulated in defendant's original brief may not be so enlarged by argument in its reply brief. State ex rel. Houser v. St. Louis Union Trust Co., Mo., 248 S.W.2d 592, 594(1); State ex rel. Joslin v. School Dist. No. 7 of Jasper Co., Mo.App., 302 S.W.2d 497, 500–501(8); Evans v. Sears, Roebuck & Co., Mo.App., 104 S.W.2d 1035, 1042(16); Conway v. Silver King Oil & Gas Co., Mo. App., 94 S.W.2d 942, 947–948(6). For the same reason, we should not and do not rule the assignment first appearing in defendant's reply brief that "the court erred in admitting the testimony of plaintiff's rebuttal witness Allgeier which invaded the province of the jury." See also In re Buder's Estate, Mo., 317 S.W.2d 828, 837 (4, 5); Myers v. Karchmer, Mo., 313 S.W. 2d 697, 710(24).

■■ What we have hereinbefore said disposes of all points in defendant's original brief, excepting only the alleged error in refusal to strike the testimony of plaintiff's witness Mattes because it was based on "guessing." Of course, a guess does not constitute substantial evidence [O'Neil Implement Mfg. Co. v. Gordon, Mo.App., 269 S.W. 636, 640(6); Christner v. Chicago, R. I. & P. Ry. Co., 228 Mo.App. 220, 64 S.W.2d 752, 756(7)]; but, to assess the import and value of that portion of the testimony of witness Mattes, which defendant here attacks, it becomes proper and necessary to consider his testimony as a whole. Steele v. Woods, Mo., 327 S.W.2d 187, 197. For, if it appears from the testimony of a witness, considered as a whole, that in using the term "guess" he intended to express an opinion or judgment, his testimony need

not be excluded. Hunter v. Helsley, 98 Mo. App. 616, 621–622, 73 S.W. 719, 721(6). See also Vortriede v. St. Louis Public Service Co., Mo.App., 58 S.W.2d 492, 493; Tews v. Bamrick, 148 Neb. 59, 26 N.W.2d 499, 503(6). So, although an answer employing the term "guess" may not, standing alone, have any probative value, it may, when considered with and in the light of other testimony by the same witness, constitute substantial evidence. Cooper v. Standard Steel Works, Mo., 190 S.W.2d 237, 238–239(2).

■ This is not a case in which the statement of a witness on direct examination was shown on cross-examination to have been a mere guess [contrast Van Bibber v. Swift & Co., 286 Mo. 317, 337, 228 S.W. 69, 76(9)], nor a case in which the testimony of the witness, read as a whole, establishes that the statement under consideration reflected sheer speculation and surmise because, in fact, he had no personal knowledge on that subject [contrast Scotten v. Metropolitan Life Ins. Co., 336 Mo. 724, 728–730, 81 S.W.2d 313, 314–315; Barnhart v. Ripka, Mo.App., 297 S.W.2d 787, 791(7); Rudy v. Cleveland, C., C. & St. L. R. Co., Mo.App., 278 S.W. 814, 815 (1)], nor a case in which the statement under consideration should be disregarded because of demonstrated inability or lack of opportunity to know of that concerning which he undertook to speak [contrast Hall v. Wilkerson, Mo.App., 84 S.W.2d 1063, 1065; Martin v. Kansas City, Mo.App., 224 S.W. 141, 142(5); Eames v. New York Life Ins. Co., 134 Mo.App. 331, 114 S.W. 85, 87(3)], nor a case in which the testimony of the witness was so riddled by self-confessed doubt and uncertainty that it should be rejected. Armstrong v. Croy, Mo.App., 176 S.W.2d 852, 853(1, 2). From his rulings in the instant case, it is apparent that the trial judge believed that witness Mattes was, in fact, undertaking to express an opinion or judgment, rather than merely hazarding a guess, when Mattes used the terms "guess" and "rough estimate" in the course of his testimony concerning the slope at the west end of the chat pile [Cheatham v. Chartrau, 237 Mo.App. 793, 176 S.W.2d 865, 868]; and, from careful consideration of the testimony of this witness, *read as a whole*, we are not persuaded to the contrary. Reversible error cannot be found in the court's refusal to strike Mattes' testimony.

■ We are not unmindful of the conflicts in the testimony, which defendant here emphasizes, but we have no license to trim and tailor our appellate disposition of the case to conform with our personal views on the merits, for "(n)othing in our jurisprudence is more firmly established than the rule that a jury's verdict is final (and not reviewable) on the fact issues, if its findings are supported by substantial evidence, and that our review of that question is limited to determining whether the evidence, considered most favorably to the result reached by the jury, is substantial evidence from which the jury could reasonably reach the result it did." Machens v. Machens, Mo., 263 S.W.2d 724, 734(16); Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 304. See also Nance v. Atchison, T. & S. F. Ry. Co., 360 Mo. 980, 232 S.W.2d 547, 554(8, 9); Colley v. Cox, Mo.App., 266 S.W.2d 778, 787(21, 22). Unable to find reversible error in any respect assigned, and unable to say that the verdict found by the jury was not authorized by the competent evidence [Hunter v. Helsley, supra, 73 S.W. loc. cit. 721], we conclude that the judgment for plaintiff should be affirmed. It is so ordered.

McDOWELL and RUARK, JJ., concur.