**Angelo TAVERNARO,**
**Plaintiff-Respondent,**

v.

**John A. DUNN and Josephine M. Dunn, Charles Cappo, a/k/a Charles Cacioppo d/b/a Industrial Wrecking Co., and Industrial Wrecking & Salvage, Inc., Defendants-Appellants.**

**Nos. KCD 28871, KCD 28879.**

Missouri Court of Appeals,
Kansas City District.

Feb. 27, 1978.

James L. McMullin, McMullin, Wilson & Schwarz, Kansas City, for defendants-appellants.

Ennis, Browne & Tapp, Allan R. Browne, Kansas City, for plaintiff-respondent.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment on verdict awarding actual and punitive damages for trespass on land. Appellants' contentions question the sufficiency of evidence and the propriety of verdict forms. Affirmed.

Plaintiff has been since July 29, 1959, the owner of Lot Thirteen (13), corrected plat of Leland Heights, an addition in and to Kansas City, Missouri. He alleged that subsequent to his acquisition of Lot 13 defendants John A. Dunn, Josephine Dunn, Charles Cappo (Cacioppo), and his company, Industrial Wrecking & Salvage, Inc., acting jointly and in behalf of one another, wrongfully entered Lot 13 and dumped, threw, and deposited demolition debris and trash, crushing and destroying trees, grass, and vegetation, and covering the ground to a depth of several feet, to the damage and depreciation of his lot in sum $4,000. He alleged also that such acts were done intentionally and maliciously for which he should be awarded punitive damages of $10,000.

The jury assessed plaintiff's actual damages at $4,000 against defendants John A. Dunn, Josephine M. Dunn, Charles Cappo, and Industrial Wrecking & Salvage, Inc., jointly and severally, and awarded him punitive damages of $2,000 against each of defendants John Dunn and Charles Cappo.

Appellants [1] Cappo and Industrial Wrecking assert the evidence was insufficient to prove that they intentionally or otherwise dumped on plaintiff's land, and the verdict to that effect is based on guesswork and speculation because plaintiff "presumed the defendants dumped debris on his land." They assert also that there was no proof of value of plaintiff's land.

There is no question that a verdict cannot be based on guesswork or speculation, *Pyles v. Roth*, 421 S.W.2d 261 (Mo. 1967); *Quinn v. St. Louis Public Service Co.*, 318 S.W.2d 316 (Mo.1958); *Antweiler v. Prudential Insurance Co.*, 290 S.W.2d 652 (Mo.App.1956); and that the verdict for this plaintiff required evidence of the depreciation in value of his land, *Denney v. Spot Martin, Inc.*, 328 S.W.2d 399 (Mo.App.1959); *Esmar v. Zurich Ins. Co.*, 485 S.W.2d 417 (Mo.1972).

Appellants' arguments emphasize their counterevidence and testimony of Mr. Tavernaro that "I never seen him [Cappo] personally" dump trash on his premises. They also deprecate his testimony on the value of his lot before and after the acts charged to defendants.

Appellants' arguments are not conclusive because there was evidence favorable to plaintiff on the issues presented by appellants' contentions and arguments. *Denney v. Spot Martin, Inc.*, supra.

Mr. Tavernaro is a stonemason employed by the Kansas City Park Department. He acquired his lot from Virgil Hawk in exchange for a 3-year-old Oldsmobile automobile in good condition and an unremembered amount of cash. The lot, located on the north side of 59th Street near Chelsea, is 40 feet by 120 feet, level from the street north through the first 35 feet, and then falling 20 feet towards a deep ravine on the rear of the Dunn property to the north. Mr. Hawk had started a walkout basement

---

**1.** Respondent's brief represents that appellants Dunn have settled with plaintiff; appellants' brief is presented in the names of Charles Cappo and "Industrial Wrecking Company."

prior to his sale of the lot to Mr. Tavernaro. There was no dump there; "it looked like a park."

Two or three years after his purchase of Lot 13, Mr. Tavernaro purchased a quantity of Carthage cut stone salvaged from a building and stacked it in the center of the lot near the old basement. He was going to use part of it for a house and part at another location. At that time his lot was otherwise clean.

Subsequently he went to the lot to get some stone for use by the City on a viaduct near Highway 50 and Ward Parkway in the Plaza. He found "about 20 rock [cut stones] thrown up with the bad boulders. * * * debris as rock broken up, concrete broken up, wood and * * * tree stumps * * * right on my own property. * * there was a bulldozer there * * *. He was pushing debris to the east. There was [debris] piled up right there from the edge of my property and clear across." Mr. Tavernaro questioned the bulldozer operator and, as a result of the conversation, called Charles Cappo at the office of his company at 12th and Jackson. He complained to Mr. Cappo of the dumping on Lot 13, its resultant loss in value, and the destruction of the cut stone. Mr. Cappo offered to give Mr. Tavernaro some stone from a church he was salvaging, and said he had permission from Mr. Dunn to dump demolition debris on the Tavernaro lot. Mr. Tavernaro met with Mr. Cappo and John Dunn at the lot two or three days later to discuss the matter. Mr. Tavernaro showed them the debris dumped on his lot. Mr. Dunn offered to give $450 for the lot, and asked for proof of ownership. Mr. Tavernaro had his lot surveyed by Anderson Survey Company. They placed pins on the corners of the lot and they enclosed the debris about which Mr. Tavernaro complained. The debris had a depth of 20 feet. After he obtained the survey, Mr. Tavernaro again talked with Mr. Cappo at the office of his Industrial Wrecking Company at 12th and Jackson. Mr. Cappo said if he had the money he would buy the lot because it was going to be good property. Subsequent to this meeting, Mr. Tavernaro received notice of an application by Mr. Cappo and Mr. Dunn for a zoning permit to dump demolition debris at 59th and Cypress. The application was on an Industrial Wrecking & Salvage, Inc., letterhead, and it authorized Mr. Cappo to act as representative of Mr. Dunn. Dumping continued in the area of the Dunn and Tavernaro properties and on Mr. Tavernaro's lot. Mr. Tavernaro saw Mr. Cappo's company truck dumping on his lot as late as the Saturday before trial. Mr. Cappo admitted that he maintained a bulldozer and operator at the 59th and Cypress site and that he was "the person" authorized to operate a dump there. Mr. Tavernaro stated the lot was worth $4,000 when purchased "with my own savings money." After it was covered by debris by defendants, he "wouldn't give them a dime."

 The foregoing abstract of evidence, all of which was in addition to Mr. Tavernaro's "presumption" which went in without objection, permitted the jury to find that Mr. Cappo and his company's truck dumped demolition debris on Mr. Tavernaro's property to his damage; and his opinion as the owner of his before-and-after dumping values was sufficient to support actual damages of $4,000. *Esmar v. Zurich Ins. Co.*, supra. The continuation of dumping by Mr. Cappo and his company's truck after Mr. Tavernaro's protest permitted an inference of the intentional wrongdoing, bad faith, and malice necessary to an award of punitive damages.

 Instruction 20 permitted a verdict upon agreement of nine or more jurors. It also contained forms of verdict. Appellants contend "it allowed an open-ended verdict and did not give the jury an option to find against one defendant and in favor of the other defendant, and consequently did not dispose of the issues."

This complaint is unfounded as demonstrated by the form suggested in the event the jury found actual damages for plaintiff, viz.:

"We, the jury find the issues in favor of plaintiff and against defendants (here insert the names of defendants against

who[m] you find) and we assess plaintiff's damage at $_____ (stating the amount)."

A similar form was suggested for punitive damages permitting findings against named defendants individually in individual amounts, all as per MAI 36.12.

Judgment affirmed.

All concur.