Farney v. Hauser.

---

No. 22,979.

J. P. FARNEY, *Appellee*, v. JACOB HAUSER et al., *Appellants*.

SYLLABUS BY THE COURT.

1. PARTNERSHIP—*Grain Elevator Business—One Partner May Contract With Partnership as Ordinary Customer.* One of several partners in a business firm may contract with the partnership as an ordinary customer, and in the latter capacity he is entitled to his due precisely as an outsider, although the mode of collecting his due by legal process is by an accounting and dissolution of the partnership and not by an ordinary action at law.

2. SAME—*Partnership Considered as Business Entity.* While a partnership is not strictly a legal entity, for practical purposes it may be considered as a business entity. It has its own capital, its own assets and liabilities, and it has a commercial life and credit of its own, virtually though not technically independent of the members comprising it.

3. SAME—*Tortious Act of Servant—Liability of Partners for Contribution.* Though a tortious act of the servant of a partnership is attributable in law to his employers, the partnership, yet where the partners themselves are not guilty of actual delinquency nor otherwise willfully culpable, contribution between the partners for the tortious act of their servant is lawful; and the rule that no contribution will be enforced between joint tort-feasors has no application.

4. SAME—*Wheat Misappropriated by Manager—Liability of Partners for Contribution.* The plaintiff and the four defendants formed a

partnership to transact the business of a grain elevator. They hired a manager to conduct and operate it. Under an agreement with the manager, the plaintiff placed over ten thousand bushels of grain in the elevator to be stored, cleaned and loaded on railway cars. The manager misappropriated a large amount of plaintiff's wheat, but the partners were free of any personal delinquency therefor. An action was brought by plaintiff to dissolve the partnership, for an accounting, and for the conversion of the wheat by the manager. *Held,* that whether plaintiff's claim against the partnership be viewed as a breach of contract, or as a claim arising from a tort attributable to the partnership because perpetrated by the servant of the partnership, contribution between the partners was properly decreed.

5. FORM OF CIVIL ACTIONS—*The Distinction Between Actions at Law and Suits in Equity Abolished.* In this jurisdiction, where all distinctions between forms of actions at law and of suits in equity are abolished, all matters of justiciable controversy arising between the same parties, whether legal or equitable, and whether already liquidated or merely capable of ascertainment, may be tried and adjudicated in one action.

6. PARTNERSHIPS — *Wheat Misappropriated by Manager — Finding of Amount Sustained by Evidence.* Record examined, and *held,* that there was competent and sufficient evidence to sustain the finding of the jury touching the amount of wheat misappropriated by the servant of the partnership.

7. SAME—*Findings Supported by Substantial Evidence Not Disturbed on Appeal.* Where there is substantial evidence to support a finding made by the trial court or jury, the supreme court adopts such finding as an ascertained fact although the record also contains evidence to the contrary; and the supreme court cannot independently undertake to determine the relative weight of the evidence, except in cases where the controlling evidence is documentary or by deposition; and this rule is the same whether the cause be in the nature of an action at law or a suit in equity.

8. SAME—*Insurance of Customer's Wheat in Elevator—Duty of Partnership to Collect the Insurance.* Where an elevator firm procures a policy of fire insurance covering its own grain and that held in trust for which it is legally liable, and a fire consumes the elevator and its contents, it is the duty of the elevator firm to make claim and proof of loss to the insurance company for the grain thus held in trust and for which it is legally liable; and *held,* that under the facts of this case, the plaintiff's grain stored and destroyed by fire in the firm's elevator was protected by such insurance, and the failure of the firm to claim and collect the insurance thereon renders it liable to plaintiff for the amount of insurance which should have been collected.

Appeal from Barber district court; GEORGE L. HAY, judge. Opinion filed May 7, 1921. Affirmed.

*Samuel Griffin,* of Medicine Lodge, *W. G. Holt, J. K. Cubbison,* both of Kansas City, and *Bruce Barnett,* of Kansas City, Mo., for the appellants.

*Adrian S. Houck,* of Medicine Lodge, *A. L. Noble, Hal M. Black,* and *C. A. McCorkle,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action was to dissolve a partnership, and for an accounting between the partners, and it also involved the question of a liability of the partnership in certain business transactions with one of their number.

In 1915 the plaintiff, J. P. Farney, and the four defendants, Hauser, Ricks, Rathgeber and McBrayer, formed a partnership for the purpose of conducting a grain elevator business at Kiowa. The capital invested by the partners was $5,300, of which the plaintiff contributed $1,500. Hauser was chosen as president and general manager and Ricks as secretary and treasurer, and the partnership business was placed in their charge. They purchased an elevator, and hired a manager, one Hagenmaster, to conduct it.

Under an agreement with Hagenmaster, the plaintiff placed some ten thousand bushels of wheat in the elevator to be stored, cleaned and loaded on railway cars, at 2½ cents per bushel. This wheat was to be loaded on cars when plaintiff chose to have that done, and in May, 1916, some 1,378 bushels of plaintiff's wheat was thus loaded out of the elevator. In February, 1917, plaintiff directed Hagenmaster to load the balance of the wheat, but this was not done, for the reason, as it was afterwards developed, that Hagenmaster had in some way made away with most of plaintiff's wheat; and on March 4, 1917, the elevator burned. Plaintiff took charge of the more or less damaged wheat found in the ruins of the elevator and sold it. Plaintiff then started an investigation as to the disposition of the remainder of his wheat, but this was interrupted by another fire which burned the elevator office and books of the partnership. Hagenmaster, the manager, was arrested for the crime of burning the elevator but he died before trial. The partnership collected some insurance on the elevator and sold some other assets for cash. It also held a policy of insurance for $2,000 on the contents of the elevator,

whether "their own or held by them in trust or on commission, or sold but not delivered if assured is legally liable, all while contained in above described buildings." The partnership officers did not include in their claim and proofs of loss to the insurance company any item for the loss of plaintiff's wheat, and settled with the insurance company for $969, and at the same time gave a bond indemnifying the insurance company against any liability for the loss of plaintiff's wheat.

The assets of the company were apportioned and distributed among the partners other than the plaintiff.

The plaintiff's petition narrated the pertinent facts, and defendants joined issues. The cause was tried before an advisory jury which answered many special questions which, with a minor exception, were adopted by the trial court. The trial court made an accounting which by computation showed that the partnership was indebted to plaintiff in the sum of $11,436.59; that the net assets of the firm were $4,524.82; that each of the parties, plaintiff and defendants, must stand his respective proportionate share of the net losses and liabilities; and that the plaintiff should have judgment against his defendant parties for their respective shares of the amount due him as an individual patron or customer of the partnership. The court also held the partnership liable to plaintiff for the sum which should have been collected from the insurance company for the burning of plaintiff's wheat. While the computations are somewhat complex the defendants do not complain of the mathematics involved in the judgment.

Defendants assign error on the ruling of the trial court that plaintiff was entitled to judgment against his partners on account of the wheat misappropriated by the partnership's manager, Hagenmaster, less the proportionate share thereof which he himself must bear as a partner in the business. They contend that Hagenmaster was the agent of all the partners and that there should be no contribution between them for his tort. Such a view fails to take note of plaintiff's additional relationship to the partnership, that of customer as well as partner. For the torts of Hagenmaster, as for all the losses of the firm, the plaintiff, like all the other partners, must bear his proportionate share; but as a customer of the partnership he is entitled to his due just as any outsider patronizing the firm

would be. Hagenmaster made away with $11,436.59 worth of plaintiff's wheat which had been placed in the elevator under a valid contract. The partnership therefore owes plaintiff that sum. But being a partner to the extent of $1,500, and the total capital of the firm being $5,300, plaintiff, as partner, must bear his proportionate share of the liability, 15/53's of $11,436.59. The other partners must likewise bear their share of this liability according to their respective interests in the partnership. Of course, the mode by which a partner may enforce his claim as creditor is not by an ordinary lawsuit, but by an accounting and dissolution.

There was nothing illegal, or at variance with the theory of a partnership, for plaintiff to deal with it as an ordinary customer. It would be absurd to hold that in this commercial age, when partnerships are so common, that a man could not buy from, sell to, trade with, or patronize a business partnership as any other person might do, and with the same rights and liabilities, merely because he had a partner's interest in the firm business. If the partnership gets into financial difficulties with third parties, a partner who is a creditor of the firm may have his claim postponed until third parties are satisfied. But for nearly all practical purposes a partnership may be considered as a business equity. (20 R. C. L. 804.) It has its own capital, its own assets and liabilities, its own business activities, and it has a commercial life and credit of its own, virtually if not technically independent of the members comprising it.

In 30 Cyc. 455, it is said:

"It is quite common for partners to buy property from the firm, or to rent or sell property to the firm, to lend it money or to borrow from it, and in many other ways, to deal with it as though it were an artificial person. While such transactions are not considered as creating strictly legal obligations, between the partner on the one side and the firm on the other, courts of equity have always enforced such obligations and, under the reformed procedure both in England and in this country, they are enforceable in appropriate actions."

But even if the tortious act of Hagenmaster, the agent, be considered as a tort of the partnership, yet the partners would be tort-feasors in law only. None of the partners was willfully culpable; none of them was guilty of actual delinquency or moral turpitude; and in such cases proportional contribution between them for the loss or damage occasioned by the tort of

their unfaithful servant is perfectly allowable. Nor is there any reason in law or logic why the rule should be otherwise. The reason why ordinary tort-feasors are refused judicial aid to enforce contribution between them is because the state does not establish and maintain courts to adjudicate between rogues or rascals who have willfully placed themselves beyond the pale of the law, nor to conduct inquiries as to their relative guilt.

In *Bailey v. Bussing*, 28 Conn. 455, several partners operated a stage line. One of their number was in charge of the stage coach and through his negligence a passenger was injured. He sued the partnership, and one of their number paid the judgment. The latter then sued another partner for contribution. The defendant claimed that, as partners, they were both wrongdoers and therefore that between them there could be no contribution. It was held that the partner who paid was entitled to contribution. The chief value of the case lies in the discussion, from which we quote:

"The defendant insists that that judgment was rendered in an action of tort, and that in that class of cases there is to be no contribution among wrong doers; the maxim of law being, as he claims, that among *tort feasors* there is no contribution. To meet this objection, the plaintiffs offered evidence, and we think with entire propriety, to prove that, while the maxim might be true as a general rule, the case on trial belonged to a class of cases to which it had no application, for that here there was no personal wrong, not even negligence in a culpable sense, on the part of Turner, and that he had been found guilty only by implication, or legal inference from a supposed relation to Bussing, the actual wrong doer, through whose neglect the other two defendants had been subjected by the jury. . . .

"What then is this case? And what is the true doctrine of the law as to contribution, or, as it may be, full indemnity, where there has been no illegal act or conduct on the part of him who seeks for a contribution? . . .

"The reason assigned in the books for denying contribution among trespassers, is, that no right of action can be based on a violation of law, that is, where the act is known to be such or is apparently of that character. A guilty trespasser it is said cannot be allowed to appeal to the law for an indemnity, for he has placed himself without its pale by contemning it, and must ask in vain for its interposition in his belief. . . If we do not find these circumstances, but perceive only a liability in the eye of the law, growing out of a mere relation to the perpetrator of the wrong, the maxim of law that there is no contribution among wrongdoers is not to be applied. Indeed we think this maxim too much broken in upon at this day to be called with propriety a rule of law, so many are

Farney v. Hauser.

the exceptions to it, as in the cases of master and servant, principal and agent, partners, joint operators, carriers and the like. . . . In *Wooley v. Batte,* before Justice Parke, 2 Car. & P., 417, one stage proprietor had been sued alone in case for an injury to a passenger through the neglect of the coachman, and, having paid the damages, he brought assumpsit for a contribution, and recovered on the ground that in him there was no personal fault. . . . In Story on Partnership, § 220, the learned commentator says, speaking of the maxim that there is no contribution among wrongdoers, 'but the rule is to be understood according to its true sense and meaning, which is where the tort is a known, meditated wrong, and not where the party is acting under the supposition of the innocence and propriety of the act, and the tort is one by construction or inference of law. In the latter case, although not in the former, there may be and properly is a contribution allowed by law for such payments and expenses between the constructive wrongdoers, whether partners or not.' The cases are all brought together in Chitty on Contracts, 502." (pp. 457, 458, 459, 460.)

In *Horbach's Administrators v. Elder,* 18 Pa. St. 33, five partners operated a stage line between Chambersburg and Pittsburgh. A careless employee overturned the stage coach and three passengers were injured. Damage suits were filed against the partners but only two of them, Horbach and McCall, were served with process. Judgment being entered for plaintiffs, the two partners served with process satisfied the judgments. One of these, Horbach, died, and his administrator brought suit against another of the partners, Elder, for contribution. One defense was that no contribution could be enforced as between tort-feasors. This contention was overruled, and it was held that Elder should stand his proportionate share of the liability incurred by the tort of the servant of the partnership, and judgment was accordingly entered for plaintiff.

In Lindley on Partnership, 8th ed., 440, it is said:

"There is a saying that there is no contribution amongst wrong-doers; but this doctrine is certainly inapplicable to partners in the general form in which it is enunciated. It is true that if a partnership is itself illegal, no member of it can, in respect of any transaction tainted with the illegality which infects the firm, obtain relief against any other member; but there is no authority for saying that if one of the members of a firm sustains a loss owing to some illegal act not attributable to him, but nevertheless imputable to the firm, such loss must be borne entirely by him, and that he is not entitled to contribution in respect thereof from the other partners."

(See, also, 6 R. C. L. 1054, 1056.)

6—109 KAN.

From the foregoing it will be seen that whether plaintiff's claim against the partnership be viewed as a breach of contract, or as a claim arising from a tort attributable to the partnership because perpetrated by the servant of the partnership (the partners being legally though not culpably liable therefor) contribution was proper and the error assigned thereon cannot be sustained.

Again it is urged that even if plaintiff was entitled to contribution, his claim was unliquidated, and therefore it could not be adjudicated in an accounting between the partners, nor otherwise in equity. Cases from jurisdictions where distinctions in procedure in common-law actions and in suits in equity are still maintained are cited to support this contention. We doubt not that such is the law in those jurisdictions, but it is not so in Kansas. Here all distinctions between actions at law and suits in equity are abolished; and, whenever practicable, all matters legal or equitable, whether liquidated or merely capable of ascertainment, may and should be tried and adjudicated in one action. (Civ. Code, §§ 10, 90.) In *Kremer v. Kremer*, 76 Kan. 134, 137, 90 Pac. 998, it was said:

"Under the common-law procedure it must be conceded that the final adjudication of an action resulted in one judgment, which was an entirety, and on appeal it stood or fell as a whole. Under the code system provision is made for joining parties and for uniting causes of action which the common-law procedure would not have permitted; also, for the rendition of judgments for and against the plaintiff in one action, and for some of the plaintiffs joined and against others; also, for and against defendants joined. In short, one adjudication may embrace several judgments. (Code, §§ 36, 37, 41-43, 83, 396, and others.)"

It is next contended that the evidence did not support the finding of the jury touching the amount of plaintiff's wheat misappropriated by Hagenmaster. It was proved that plaintiff placed 10,591 bushels of wheat in the elevator; that 1,378 bushels of this amount was loaded out on a railway car, that the partnership only had 530 bushels of its own in the elevator at the time it burned; that 2,642 bushels of damaged wheat was taken from the ruins, and that, according to competent opinion evidence, not more than from *three* to *twenty per cent* of wheat stored in an elevator is commonly consumed when an elevator burns. The jury were liberal; they determined that twenty-five per cent of plaintiff's wheat was

consumed in the elevator, and upon these bases, and upon all the relevant circumstances they concluded that Hagenmaster must have misappropriated 5,461 bushels. This evidence and the calculations made therefrom fully justified the finding.

There was an issue of fact touching the condition of the wheat. Defendants said the wheat was infested with weevils, and that an elevator fire will consume a much greater portion of weevily wheat than it will of sound wheat. There was evidence on both sides of the question as to the presence of weevils in the plaintiff's wheat. The jury settled that matter:

"Question 17. To what extent, if any, did you find that the plaintiff's wheat, at the time of the fire, had been damaged by weevil? Answer: No damage."

But it is said that this finding was greatly against the *weight* of the evidence, and that as this is an equity case we should decide this question of fact for ourselves. Unless the evidence is documentary (*Mathewson v. Campbell,* 91 Kan. 625 627, 138 Pac. 637), or by deposition (*Record v. Ellis,* 97 Kan. 754, 760, 156 Pac. 712), that is not done and cannot be done by this court, whether the case be one at law or in equity. (*Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057.)

Defendants' final contention is that they should not be charged with their failure to collect insurance on plaintiff's wheat. They do not appear to question the general rule that where a warehouseman takes out a policy of insurance to protect his own interest in property and that held in trust by him, or concerning which he may have a liability, it is his duty to claim and collect such insurance not only for a fire loss on his own property but also for the loss sustained by the owner of the property intrusted or bailed to him. Such, of course, is the general rule (*Home Ins. Co. v. Balt. Warehouse Co.,* 93 U. S. 527, 23 L. Ed. 868, and Rose's notes thereto at page 442 *et seq.*) And it is also settled that the failure of the warehouseman to collect such insurance renders him personally liable therefor to his customer or bailee. (*Southern Cold Storage, etc., Co. v. A. F. Dechman & Co.,* [Tex. Civ. App. 1903] 73 S. W. 545; *Johnston v. Charles Abresch Co.,* 123 Wis. 130. See, also, 27 R. C. L. 955-958.) But defendants resist the allowance made by the trial court for their failure to collect the insurance for plaintiff, not by taking issue with the rule just

stated, but merely on the same general ground urged by them against the imposition of any liability for the loss of any part of plaintiff's grain—that the partnership was not liable to plaintiff; but that matter is already disposed of in this opinion and needs no further discussion.

The record contains no error and the judgment is affirmed.