**BARTLETT AND COMPANY, GRAIN,**
a corporation, Plaintiff,

v.

**COMMODITY CREDIT CORPORATION,**
a corporation, Defendant.

No. 12240.

United States District Court
W. D. Missouri, W. D.

Oct. 18, 1960.

Charles B. Blackmar, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, Mo., for plaintiff.

Edward L. Scheufler, U. S. Atty., W. D. Missouri, W. D., Kansas City, Mo., for defendant.

RIDGE, Chief Judge.

Defendant moves for summary judgment pursuant to Rule 56, F.R.Civ.P., 28 U.S.C.A., seeking dismissal of plaintiff's complaint and judgment in its favor under Count I of its counterclaim. In its suggestions in opposition thereto, plaintiff states that it has "considered filing a cross-motion for summary judgment," because points 1, 2, 3, and 4, proffered by it in support of its claim against defendant "raise only legal issues and do not involve factual points which are in dispute." Because it appears to the Court that the questions presented by plaintiff under its points 5 and 6, do not raise any substantial controverted factual issue that would militate against a favorable ruling on defendant's motion for summary judgment, we proceed to a consideration of such motion.

Plaintiff, by its complaint, seeks declaratory relief under Title 28 U.S.C.A. § 1349 and 15 U.S.C.A. § 714, to the effect that Commodity Credit Corporation, an agency and instrumentality of the United States of America (15 U.S.C.A. § 714) is entitled to no more than $179,351.47, as its pro rata share of the proceeds of insurance, collected through a judgment obtained by plaintiff, in its former name, in an action instituted by it in the Circuit Court of Jackson County, Missouri, and later sustained on appeal by the Supreme Court of Missouri. In that case plaintiff premised a claim against a number of insurance companies on three certificates of insurance issued to plaintiff as the operator of the River-Rail Elevator, located in Kansas City, Kansas, affording coverage for loss of grain stored therein, and also loss due to interruption of business. In that action a jury assessed the amount of plaintiff's whole loss, with interest, at the sum of $769,522.74. However, when that litigation was finally concluded, judgment was entered in favor of plaintiff and against the defendants therein for $696,517.62. Of the total amount of the judgment as finally entered, $308,846.77, plus $61,169.33 interest, represented a recovery by plaintiff for loss of grain partially owned by it and by holders of "Terminal Public Warehouse Receipts" issued by plaintiff in respect to grain stored in River-Rail Elevator; which plaintiff operated under license from the State of Kansas. The facts and issues adjudicated in that action are set forth in detail in Hart-Bartlett-Sturtevant Grain Company v. Aetna Insurance Company, 1956, 365 Mo. 1134, 293 S.W.2d 913.

Concededly, defendant's share of the grain loss supra, amounted to $258,403.52. In respect to that loss, plaintiff, after "collecting" the amount of the above judgment, tendered a check to defendant for $179,351.41, on the theory that such amount constituted defendant's share of the total loss of grain, less a proportion of the attorney's fees and other expenses incurred by plaintiff in the prosecution of the above-mentioned litigation. Hence the issues on the present action, tersely stated, revolve around the question, whether defendant is to be charged with any portion of the total litigation expense and attorney's fees incurred by plaintiff in the prosecution of the above-referred-to action; or, whether defendant is entitled to the sum of $251,049.04, concededly recovered by plaintiff from insurance which offered coverage for the market value of defendant's grain loss, with interest thereon from March 6, 1957, the date such loss was "collected" by plaintiff.

We do not deem it necessary to follow the parties in all the ramifications of the lengthy briefs filed in respect to the above issue. The salient background facts and the single issue, determination of which we find to be decisive, can be stated with comparative brevity.

When the flood of 1951 occurred in Kansas City, Missouri-Kansas, plaintiff's grain elevator located in Kansas City, Kansas, was one of it victims. Much of plaintiff's own grain, as well as that of defendant, and that belonging to others holding Terminal Public Warehouse Receipts, issued by plaintiff, was destroyed. After such destruction, plaintiff was doubtful whether insurance policies obtained by it provided coverage for any such loss. However, it appeared to plaintiff, and its attorneys, that the proximate cause of the damage sustained to the grain in question, or to a large portion thereof, might have been due to the imbibition of some grain by flood waters, resulting in pressure which caused a number of explosions to occur in the elevator, releasing undamaged grain into the flood waters as a consequence of the "explosions". Accordingly, proofs of loss were presented to the insurance companies and when no adjustment was forthcoming suit was filed by plaintiff. The case was fought vigorously, on both sides, through courts of the State of Missouri and up to a denial of certiorari by the Supreme Court of the United States, on February 25, 1957. 352 U.S. 1016, 77 S.Ct. 562, 1 L.Ed.2d 548.

Commodity was at all times aware of such litigation. During pendency thereof, Commodity received a letter from plaintiff, suggesting that it either pay its share of the litigation expense, or else waive its right to share in whatever proceeds might result from the suit.[1] However, plaintiff did not hear from Commodity until after the Supreme Court denied certiorari, making plaintiff's victory in that litigation final. At that time, Commodity took the position, and maintains the same by its counterclaim herein, that it is, and was, entitled to receive a proportionate share of the insurance recovery obtained by plaintiff for grain loss, equal to the market value of its grain, which value determined a part of the total recovery made by plaintiff for

loss of grain in such action; and this without any obligation on the part of Commodity to pay any part of the total cost of litigation incurred by plaintiff in connection therewith.

Plaintiff's answer to the contention of Commodity takes many forms. Basically, its contention is premised in the legal proposition, that when a person expends labor and effort in the creation of a fund which inures to the benefit of himself and others, such others are obliged to bear their fair share of the expense of creating the fund as a condition of sharing in the proceeds; as laid down in Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Wallace v. Fiske, 8 Cir., 80 F.2d 897, 107 A.L.R. 726. Auxiliary thereto, and as to which plaintiff asserts a question of fact exists, is the contention that a casualty of the magnitude of the 1951 Flood and litigation of the complexity and difficulty of proof of the explosion case, were not within the reasonable contemplation of the parties at the time of the execution of the "Uniform Grain Storage Agreement" by plaintiff and Commodity, and that Commodity is estopped to contend that no charge can be made against it on account of fees and expenses of litigation incurred, for the reason that Commodity tacitly acquiesced in the prosecution of said suit, without ever claiming that plaintiff was bound to maintain the suit at its own expense, or that it was entitled to the entire amount of its loss recovered, without abatement, until after the termination of the litigation. Hence plaintiff says that the rights and liabilities of the parties in this action are to be governed by the general rule above stated, and not by any contract relation between the parties. Although this latter contention appears to be "weft of gossamer" so far as it constitutes any legal reason for charging Commodity with any portion of the cost of litigation here considered, having been seriously made by plaintiff, it must be con-

---

1. Transparently, Commodity had no legal obligation to make a choice or reply to such letter if plaintiff had a legal obligation at the time thereof, to "collect" the insurance in question "at its own expense."

sidered. When fully sounded, we do not believe it presents any disputed factual issue militating against a ruling being made on Commodity's motion for summary judgment.

The long and short of plaintiff's contention is, that plaintiff feels it took a gamble in instituting suit on the certificates of insurance in question; that it spent a great deal of time, effort and expense in a hard-fought legal battle to obtain the recovery that it made therein; that as a result of all this, Commodity has been benefited, without sustaining any of the burden cast on plaintiff; therefore, plaintiff asserts in this action that it has the right to have the Court declare, under general principles of law, rather than any contracts existing between plaintiff and defendant, that Commodity may be charged with a portion of the expense of prosecution and concluding the suit in which recovery was made, and that the claim otherwise made by Commodity is so lacking in equity that it cannot be allowed, unless compelled by express language in an unequivocal contract between the parties.

We do not find the issue herein to be so involved. Shredded of all superfluity and simply stated, the issue boils down to whether plaintiff had a legal obligation, by the Uniform Storage Agreement here considered, to bring suit to collect such insurance and pay to holders of certificates issued by plaintiff, the money so collected. By paragraph 15 of the Uniform Storage Agreement (Exhibit 3) entered into between plaintiff and defendant on July 1, 1950; as well as Section 34–236, G.S.Kan.1949, certain obligations were imposed on plaintiff, as a Public Grain Warehouseman. Paragraph 15 of the Uniform Storage Agreement, supra, provides as follows:

"15. Insurance—Without in any way limiting his obligation under the other provisions of this agreement, the warehouseman shall insure and at all times keep insured, in his own name, all the grain for the full market value thereof (rather than the support price), against loss or damage by fire, lightning, inherent explosion, windstorm, cyclone, or tornado, and, in the event of any loss or damage to the grain, or to the warehouse, whether or not such loss was insured against, he shall immediately notify Commodity and the holders of the warehouse receipts and the certificates provided for in section 9(b) representing such grain, as the holders appear on the records of the warehouseman, and he shall at his own expense promptly take the steps necessary to collect any moneys which may be due as indemnity for such loss or damage, including the bringing of suit, and, as soon as collected, shall pay to the holders of such warehouse receipts and certificates such moneys as may be collected for the loss or damage. For purposes of this section, 'full market value' shall mean the value required by law to be used by underwriters in paying for losses of grain insured for its actual cash value. The warehouseman shall pay to the holders of the warehouse receipts and certificates, in addition to the insurance proceeds, any amount by which the insurance proceeds are less than such full market value, whether resulting from failure to collect in full from the insurer, failure to obtain a policy affording full coverage, or failure to report the total value of grain on hand on the last reporting date under a reporting form of policy. In the event the warehouseman insures against hazards to the grain not specified herein, such insurance shall inure to the benefit of the holders of the warehouse receipts and certificates."

Section 34–236, G.S.Kan., 1949, required plaintiff to insure the grain in its elevators "for its full market value against loss by * * * internal explosion * * *" and the same statute gave to the holders of warehouse receipts issued by plaintiff on grain stored in its elevator "a first lien, to the extent

of the value of the grain at the time of destruction at the place where stored, on all such insurance for any loss or injury sustained by them on account of the destruction or injury of such grain by * * * internal explosion, * * * or any other cause covered by such insurance policy." Cf. Farney v. Hauser, 1921, 109 Kan. 75, 198 P. 178; Millers National Insurance Company v. Bunds, 1944, 158 Kan. 662, 149 P.2d 350, 354, 153 A.L.R. 176.

■ In light of the provisions of Section 15, supra, and the mandate of the Kansas Statute, supra, we think that this single issue is presented to the Court, namely, whether or not under the provisions of Paragraph 15, supra, there is an expression of intention on the part of the parties thereto, that plaintiff had a legal duty to bring suit on the insurance certificates in question, collect the proceeds thereof, pay the amount thereof to certificate holders, and to stand the expense of so doing, regardless of any issue as to the equities resident in such situation, and that such issue should be answered affirmatively. Such appears to this Court to be the interpretation to be given to Paragraph 15, supra, in light of the facts involved, when the language thereof is given its common, ordinary meaning. Plaintiff admits that "what the agreement says is, that the warehouseman—is to take the steps necessary to collect any moneys" which may be due as indemnity for grain loss or damage, "including the bringing of suit." (Plf's brief, p. 12) From that premise, plaintiff argues, however, that its obligation to so bring a suit is to be distinguished from any obligation of prosecution of the action, which is the further conduct of a suit that has been brought; and that, when it commenced the suit at its own expense, its contract obligation was fulfilled; and, the contract being silent about its responsibility for prosecuting the suit, general principles of law, rather than any contract language supra, are to be applied to determine who should stand the expense of prosecuting and concluding the suit in question.

We do not agree, because such argument ignores the term "collect" used in paragraph 15, supra; also, because the laws of the State of Kansas specifically required plaintiff, as a warehouseman, to insure and at all times keep insured, in its own name, all of the grain stored by Commodity in plaintiff's warehouse for the full market value thereof, against loss or damage by fire, lightning, inherent explosion, windstorm, cyclone, or tornado and in the event the warehouseman insured against hazards to the grain not specified therein such insurance shall inure to the benefit of the holders of the warehouse receipts and certificates, and Commodity had a first lien thereon to the extent of the value of its grain lost. (See 34–236, G.S.Kan., 1949.) (Par. added.) In the case at bar, plaintiff admits that the insurance policies under which it obtained judgment for loss of grain stored in its warehouse was "insurance for the benefit of the owners of the grain, including the defendant, the plaintiff, and all other holders of warehouse receipts," and that "the insurance policies so stated on their face, as did the petition in the suit against the insurers." (Plf's Brief, p. 9) In light of such admissions and the provisions of Paragraph 15, supra, which specifically required plaintiff to take "steps necessary to collect any moneys which may be due as indemnity for (grain) loss or damage" and the provisions of the Kansas Statute, supra, we do not believe that plaintiff's contention, "that the receipt holders only get what is left after deduction of expenses necessarily incurred by it in the collection" of the insurance proceeds in question, can be sustained.

■ The "Uniform Warehouse Agreement" unequivocally placed the obligation on plaintiff to "collect" insurance as to which Commodity admittedly had a statutory lien. "Collect" means not only to "demand" but to "obtain payment" of an obligation. (Cf.) Webster's International Dictionary. Hence plaintiff's express obligation to Commodity in the premise of this undisputed factual situation, was not fulfilled merely by bringing

an action looking to recovery of an insurance loss, but related also to the prosecution of such an action to "collect any money due for such loss" which Commodity sustained within the ambit of any insurance coverage applicable to such loss; and, "as soon as collected, * * * pay to the holders of * * * warehouse receipts * * * such money as may be collected for the loss or damage" sustained. Such obligation assumed by plaintiff did not require Commodity to pay any costs incident to the litigation in question. (Cf.) Century Insurance Co. v. First National Bank, 5 Cir., 102 F.2d 726.

Plaintiff's contention that the insurance coverage provided, exceeded the coverage required by the Uniform Warehouse Agreement and the Kansas Statute and, therefore, it had no obligation to collect same, is without merit. Plaintiff admits that its so-called "optional insurance * * * inured to the benefit of the receipt holders." (Plf's Br., p. 10) Therefore, its obligation to "collect" such optional insurance was the same as though it was of particular form of insurance mentioned in paragraph 15, and the Statute, supra. Whether "optional" or not, if liability existed under any insurance for the loss in question, it related to "moneys which may be due as indemnity for such loss or damages," and plaintiff's obligation in respect to such "indemnity" was to "collect" and "pay" the same to "warehouse receipt" holders for the "loss and damage" sustained by them. Any uncertainty of recovery regarding that matter did not abrogate plaintiff's specific contractual obligation to take all steps necessary to "collect" the "loss and damage" in question.

In light of such obligation, if plaintiff did not "bring suit," and prosecute the same to collect such indemnity, we think any holder of a warehouse receipt applicable to the grain loss here considered, could have brought suit for such insurance coverage and recovered the reasonable costs of bringing and prosecuting such an action from plaintiff.

■ Plaintiff's uncertainty as to successful recovery in the action brought did not subvert the law or plaintiff's obligation, so as to create any equitable right in plaintiff under the facts here considered. "Certainty" of recovery is generally an illusion and not essential to an obligation to bring suit to collect a loss or damage suffered. As Lord Mansfield said, in Jones v. Randall (1774) 1 Cowp. 37, 40:

"It would be very hard upon the profession, if the law was so certain, that everybody knew it; the misfortune is that it is so uncertain, that it costs much money to know what it is, even in the last resort."

■ We find no merit in plaintiff's contention that it presented the action in the state court as a "class action." Such action was not only for recovery of "grain loss" but also for interruption to plaintiff's business as a warehouseman. The total recovery therein was for both such losses. The complaint is filed in the state court reveals both claims made therein to be premised on certificates of insurance executed and delivered to plaintiff which expressly "insured plaintiff against loss of or injury to merchandise owned by plaintiff or for which it had assumed liability by agreement or by contract or from which plaintiff as a warehouseman was required to assume liability." And for "loss of gross earning * * * resulting from interruption of business." (Compl., pp. 3, 5.) Under Section 507.- 010, V.A.M.S.,[2] plaintiff was the real party in interest to such action and was authorized to sue in its own name for such losses. Under paragraph 15, supra, it had the legal obligation to so bring and prosecute such an action. The person in whose name a contract is made is the proper party to sue thereon, and ownership of the grain stored is immaterial. (Cf.) Bennett v. Chicago, R. I.

2. Now V.A.M.R. Civil Rule 52.01.

& P. R. Co., 151 Mo.App. 293, 131 S.W. 770.

Defendant's motion for summary judgment should be sustained.

It is so ordered. Counsel prepare judgment entry.

